## LOWER COLORADO RIVER AUTHORITY
### v. HUGHES et al.
#### No. 8743.

Court of Civil Appeals of Texas. Austin.

Nov. 9, 1938.

Rehearing Denied Nov. 30, 1938.

Powell, Wirtz, Rauhut & Gideon and Homer Thornberry, all of Austin, for appellant.

White, Taylor & Gardner, of Austin, for appellees.

BLAIR, Justice.

This appeal arose out of a condemnation proceeding instituted by appellant, Lower Colorado River Authority, to condemn 320 acres of land belonging to appellees, Fritz Hughes and wife, and others alleged to have an interest therein, for use in the construction of Marshall Ford dam. The commissioners appointed awarded appellees $10,000 as their damages. Both appellant and appellees appealed from said award, appellant claiming that it was excessive and appellees claiming that it was insufficient. By a written statement filed at the beginning of the trial, appellees admitted the authority of appellant to condemn the 320 acres of land and to take possession thereof, and stated that the only question presented was the amount of damages suffered by appellees for the taking of the 320 acres and damages done to the land of appellees adjoining the 320 acres condemned; and appellees, with permission of the court, assumed the burden of proof as to the amount of damages suffered. The jury found that the actual cash value of the 320 acres taken was $11,406, and that the damages to the adjoining 60 acres of appellees was $240. Judgment was accordingly rendered for appellees for $11,646, and interest; hence this appeal.

Appellant contends that the jury finding of value as to the 320 acres taken is without support in the evidence; and in the alternative, that it is against the great weight and preponderance of the undisputed evidence. In this connection appellant also contends that the court erred in admitting in evidence, over objection, or refusing to strike out the testimony of several witnesses of appellees as to the market value of the 320 acres, because the witnesses were shown not to be qualified to testify and did not show that they possessed sufficient knowledge of the market value of the land to give an opinion thereof. Neither of these contentions is sustained.

A detailed statement of the asserted grounds of disqualification of the several witnesses to give their opinions as to the market value of the 320 acres of land need not be made. The court did not submit the question of market value to the jury, but the question of the "actual cash value" of the land. No complaint is here made of the failure to submit the question of market value, and in consequence the question of whether the evidence of appellant sufficiently showed that the property had a market value is not material. Appellees alleged and tried their case on the theory that the property had no market value, but that it had an actual, reasonable or intrinsic value; and the rule is settled that when property taken or destroyed has no market value, its actual, reasonable or intrinsic value may be shown. Gulf, C. & S. F. Ry. Co. v. Jackson, 99 Tex. 343, 89 S.W. 968; Taylor County v. Olds, Tex. Civ.App., 67 S.W.2d 1102, 1103; Ft. Worth & Denver City Ry. Co. v. Amason, Tex. Civ.App., 239 S.W. 359; Ft. Worth & Denver N. Ry. Co. v. Sugg, Tex.Civ.App., 68 S.W.2d 570; and 19 Tex.Jur. 200–204, and cases there cited. Appellees' witnesses showed that there had been no sale of river front property similar to that of appellees, either above or below it for several miles, within five years of the time in question, except one place had been partitioned, which is in nature a forced sale, and possibly another had been sold but no information was given as to it; that neither the property in question nor any similar property in the vicinity of it was for sale; and that most of the similar properties had been owned by the present occupants for a period of from 20 to 50 years. The court properly defined "actual cash value" by instructing the jury to arrive at the "actual cash value" of the 320 acres of land by taking into consideration all of the uses made of it, and all uses to which it might be adapted, except as a dam site; and that "actual cash value" meant the price the land should sell for in cash if offered for sale by one not obliged to sell and purchased by one not under necessity of doing so. Proof of actual, reasonable or intrinsic value of the property may be shown by the value of its uses, its particular fitness for such uses, and its adaptability for any other uses or purposes, and the reasonable value thereof; and, generally, a witness may give his opinion of the value of such property based on such uses and the value thereof, when it has been shown that he has some knowl-

edge of such uses beyond that of the jurors. Grayce Oil Co. v. Peterson, 128 Tex. 550, 98 S.W.2d 781; 19 Tex.Jur. 206–208, and cases there cited. Appellees' witnesses fully qualified under this rule as will be later shown; and if any did not so qualify, then the admission of such opinion is harmless under the rule that where value is fully established by opinions of qualified witnesses, any error arising out of the receipt of opinions of unqualified witnesses is harmless and will not occasion a reversal. Grayce Case, supra. Such is the situation in the instant case.

The evidence sustaining the jury finding that the actual cash value of the 320 acres of land was $11,406, is as follows:

The entire 320 acres of land was taken for use of dam project. The 97 acres immediately abutting on the Colorado river was rich, deep alluvial soil, built up through the years by the overflow of the river until it had a depth of some sixty feet, was in a good state of cultivation, having no noxious grasses or weeds, and was easily accessible to the river for irrigation. The 97 acres had more than 300 growing pecan trees, some bearing and others ready to be budded; and although an unprecedented flood in 1935 destroyed many of the pecan trees, the aforementioned remained and were well spaced over the 97 acres, which was unusually fine pecan land, and was productive of corn and all other agricultural products; and their annual value, generally, per acre was shown. Witnesses who had been engaged in pecan culture and industry for a long number of years and who inspected the land testified that the 97 acres of land was worth from $200 to $500 per acre as pecan land at the time it was condemned by appellant. The several witnesses of whose disqualification to testify as to the market value of the land is complained of, and several others whose similar testimony was not objected to, most of whom had lived in the vicinity of the land in question from 20 to 50 years and knew the land, and some of whom owned the adjoining and nearby river lands, testified that the 97 acres of appellees was the best bottom land in the vicinity, because rich, deep alluvial soil had been built up through the years by the overflow of the river until it was above ordinary flood stage; that they knew the character of the 97 acres of land in cultivation, its productivity of all agricultural crops, and, generally, their value per acre,

and of its particular fitness for pecans, some of them being experienced in raising pecans on their nearby lands; and that based upon their knowledge of the uses testified to, they estimated the value of the 97 acres to be from $150 to $300 per acre. Several of appellees' witnesses testified that they knew the kind and character of the remainder of the 320 acres of land; that it had considerable merchantable cedar timber on it, was good grazing land for sheep, goats, cattle and other live stock; had an abundant supply of water in the river for all uses; and had a good house of four rooms, good barns and fences, and a good cistern for domestic water; and they and other witnesses testified that the value of the cedar and pasture land was from $8 to $30 per acre for the remaining 223 acres of land. This evidence showed the value of the 320 acres of land to be more than $20,000; and the jury's finding that the actual cash value of the 320 acres of land was $11,206 is sufficiently supported by the evidence.

After taking the 320 acres of land for dam site uses, there remained 60 acres of pasture land of appellees, and the jury found that its value had been damaged $240 by reason of taking the 320 acres. Appellant contends that neither evidence nor pleading supports this finding of damages and the judgment therefor. Several witnesses testified that as a part of the 320-acre tract the 60 acres of land was worth from $8 to $15 per acre; and that after its isolation by virtue of taking the 320 acres of land, its value decreased one-half. Upon this evidence the jury found that the 60 acres was worth $480 immediately before the taking of the 320 acres, and $240 after the taking of the 320 acres. The evidence sufficiently sustains the jury finding.

No objection was made to any deficiency of pleadings for damages to the 60 acres of land, nor to any evidence as to its being damaged. Appellees filed at the beginning of the trial a written statement admitting that appellant had the right to condemn the land, and alleged that the "only issue * * * is the value of the land taken and the damage done to these defendants' property adjoining that which has been condemned by plaintiff," and appellees assumed the burden of proving such damages. The authorities hold that on an appeal in condemnation proceedings the defendant need not particularize in writing the damages claimed, nor file written plead-

ings, because the statute, Vernon's Ann. Civ.St. art. 3265, regulates what items of damages he may recover, and the only question on the appeal is the amount of such damages. Dallas, etc., Ry. Co. v. Day, 3 Tex.Civ.App. 353, 22 S.W. 538; Wichita Falls & W. Ry. Co. v. Wyrick, Tex.Civ. App., 158 S.W. 570; 16 Tex.Jur. 800, § 167.

The other propositions briefed by appellant have been carefully considered, and are not sustained, and the judgment of the trial court is affirmed.

Affirmed.