R. L. Whitehead, Cr. Dist. Atty., Longview, David C. Moore, Asst. Cr. Dist. Atty., Longview, George P. Blackburn, State's Atty., of Austin, for the State.

BEAUCHAMP, Judge.

The appeal is from a conviction for murder with a penalty of ten years in the penitentiary.

■ Appellant has filed no brief in this case but his attorney presented for filing a

motion for permission to withdraw the appeal, which was signed by the attorney alone. This motion was returned and not filed because the same is not in compliance with the statute.

The evidence amply sustains the jury's verdict and same will not be discussed.

■ It appears from the motion for new trial that two questions were raised. The first complained of the sufficiency of the indictment in that it alleged that appellant killed the deceased "by striking him with a piece of wood." Under many authorities we have held this to be sufficient. Beaver v. State, 63 Tex.Cr.R. 581, 142 S.W. 11; Smith v. State, 123 Tex.Cr.R. 95, 57 S.W. 2d 163; Cassell v. State, Tex.Cr.App., 216 S.W.2d 813; and Dwyer v. State, 12 Tex. App. 535.

The second complaint refers to paragraph No. 13 of the court's charge, wherein is submitted an issue of provoking the difficulty. In the absence of a brief by appellant we are not able to discuss this question and consider that none is necessary.

Finding no reversible error, the judgment of the trial court is affirmed.

## CONTINENTAL PIPE LINE CO. v. KIEL et al.
### No. 15104.

Court of Civil Appeals of Texas.
Fort Worth.

Feb. 3, 1950.

Rehearing Denied March 10, 1950.

826

Nelson, Montgomery & Robertson, and Lee Sellers, all of Wichita Falls, attorneys for appellant.

McDaniel, Luecke & Peery, and Edwin Luecke, all of Wichita Falls, attorneys for appellees.

SPEER, Justice.

Appellant, Continental Pipe Line Co., a corporation, having the right of eminent domain, instituted condemnation proceedings to acquire lands for laying a pipe line across the property of appellees, Otis Kiel, Weldon Thomas Johnson and Mae M. Johnson. A separate proceeding was instituted against each of the named appellees. It was stipulated that all statutory requirements had been complied with. The commissioners appointed by the County Judge had a hearing and made an award in favor of each of appellees in different amounts. They each timely filed identical objections to the award and appealed to the County Court.

By agreement of all parties the appeals were consolidated in the County Court. It was stipulated at the trial that all matters involved to that time were regular, "leaving only the question of damages for determination." Trial was to a jury on special issues. Upon the verdict, the court entered one judgment, awarding different amounts for each of the three appellees. Condemnor was dissatisfied with the judgment and has appealed.

Appellant's first point of error reads: "The error of the trial court in overruling appellant's special exception No. 1 excepting to appellees' pleading on the ground that no measure of damages was pleaded by appellees."

Among other things pleaded by appellees in their objections to the award of the commissioners, this appears:

"The sum of (each appellee naming the amount awarded by the commissioners) awarded therein as damages or (for) such taking is wholly insufficient:

"(A) Does not award adequate damages. for the value of land actually used and destroyed by such right of way.

"(B) Does not award adequate damages for consequential damage occasioned by said right of way and laying of said pipe line."

■ Appellant relies mainly upon the ordinary rules of pleading which require a party to apprise the court and opposing party of the facts upon which the pleader relies as constituting his cause of action, and cites many cases so holding. It must be conceded that this is the general rule of pleading. The decided cases strongly indicate that such general rule is not applicable to condemnation cases. When a condemnor invokes his rights under the statutes. to take another's property, he is charged with knowledge of the owner's measure of damage, and the court will infer that measure of damage from the facts asserted by the condemnor; and the defending condemnee will not be required to plead what condemnor has pleaded by implication. Wichita Falls & W. Ry. Co. of Texas v. Wyrick, Tex.Civ.App., 158 S.W. 570.

In condemnation proceedings when the requirements of Article 3266, R.C.S., Vernon's Ann.Civ.St. art. 3266, have been complied with and either party is dissatisfied with the award, such party shall file with the County Judge his objections thereto in writing within ten days, setting forth the grounds of his objections. This was done in this case and the point before us is whether or not the grounds of objections above pointed out were sufficient as against a special exception claiming that condemnee had not pleaded his measure of damage.

■ In cases like the one before us, Article 3265, R.C.S., Vernon's Ann.Civ.St. art. 3265, fixes the measure of damage at the value of the land taken and the injury to that part remaining caused by reason of the condemnation and the uses to which that part taken will be put. In such instances the only issue to be determined is the value of the land taken and damages to that part not taken. The condemnee

who is dissatisfied with the award of the commissioners and timely makes his objections thereto is not required to allege the damages sustained or "to particularize the elements of damages produced by such condemnation proceedings." Fitzgerald v. City of Dallas, Tex.Civ.App., 34 S.W.2d 682, 683, writ refused; Kennedy v. City of Dallas, Tex.Civ.App., 201 S.W.2d 840, writ refused, n. r. e.; Lower Colorado River Authority v. Hughes, Tex.Civ.App., 122 S.W.2d 222, writ dismissed. It is held in the last cited case that the objecting land owner need not file written pleadings because the damages he can recover are fixed by statute. In the case of Fitzgerald v. City of Dallas, supra, it was held that the pleading was sufficient when the objections to the award recited: "because the award of $150 was wholly insufficient compensation for the property taken and the damages to the remainder of appellant's property." As will be noted from what we have already said, appellees' objections to the award embrace almost the identical language just quoted and went further and subdivided this objection so as to cover (a) the value of the land taken and (b) damages to that part remaining.

Many other cases are cited for the holdings in the limited number of cases cited by us to which we also refer. Under authority of the cited cases we overrule the assigned point of error.

The second and remaining point relied upon by appellant complains because the trial court, over its objections, permitted appellees and other witnesses to testify as to the value of the land in question for subdivision purposes.

Appellant's objection to the offending testimony was based upon the contention that such testimony was too remote and speculative. The record discloses that testimony was offered to the effect that the land involved is on a paved road approximately two to three miles from the corporate limits of the City of Wichita Falls, which city has a population of approximately 70,000; the lands are fertile and are under irrigation; they have been used in the past for farming and grazing purposes; such of the land as is adjacent to the paved

road was, prior to laying the pipe line, adapted to subdivision for acreage rural homesites and as such had a much greater value than for strictly agricultural and grazing purposes; the presence of the pipe line materially damaged the remainder of the land even for farming purposes, in that much expense will be required to level the ditches and remove the ridges made in laying the line before irrigation could be resumed upon that part not taken, and further when water is turned onto the land in its present condition, much of the water will sink into the soft dirt in the ditches and be lost for irrigation purposes. There is further testimony to the effect that the presence of the pipe line creates a fire hazard and must be patrolled, inspected and repaired, all of which in connection with its presence materially lessened the value of those parts not taken which were adapted to subdivision for homesite purposes; appellees had, prior to the time the line was laid, been approached by prospective purchasers of suburban homesites, at advanced prices, but neither had consented to make such sales nor had either definitely concluded that he would sell the part of his land adjacent to the road; each of the appellees knew of those existing potentialities of enchanced values, although neither had definitely determined to avail himself of them. Clearly, because of the adaptability of the lands for such subdivisions, the enhanced values existed prior to laying the pipe line, and those values were depreciated by the laying of the line.

Referable to the admissibility of evidence relating to the damage to that part of the land not taken by condemnation, 16 Tex. Jur., pp. 1026-7, sections 344 and 345, lays down the general rule in this language: "In addition to the actual use made of the property, regard may be given by the jury to any use for which the property is adapted, and which should be taken into account in estimating its market value." And again, "It follows from the rule that potential uses of the property may be considered, that it is legitimate for the owner to show that his land is adaptable to other uses, and that its present use alone is not the true basis of the market value. Thus

evidence is admissible that it is probable that the car lines will be extended to the vicinity of the property, and that the tract will then become salable in lots for high-class suburban residences."

Nothing could be gained by enumerating situations and fanciful and sentimental ideas harbored in one's mind in which he sees "a pot of gold at the end of the rainbow," which rainbow does not exist. Courts will resolve such matters as being too remote and speculative. An example is found in Galveston, H. & S. A. Ry. Co. v. Schelling, Tex.Civ.App., 198 S. W. 1018. The test seems to be that the owner may show uses his land was suitable for or adaptable to affecting its value under the facts and circumstances existing at the time condemnor's acts occurred. This is true whether the owner had chosen to avail himself of the situation or not. If the value existed it belonged to him and the condemnor could not take it from him without just compensation.

It often happens that in cases like this many elements or evidentiary matters go to make up the value of land. After all is said, the measure of damage is the difference in the value before and after a portion of the land is taken. It may sometimes be difficult to arrive at values. Perhaps the most logical way is upon testimony of competent witnesses who take into consideration the existing elements and factors recognized by our courts which go to make up the value. One of those elements is a consideration of the uses for which the land is especially suited or adapted. On this question in State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194, 198, 979, the court said: "Of course, the particular purposes to which property is devoted, as well as others to which it is adapted, may be shown in evidence to enable the court and jury to determine its market value, * * *." The court cites many cases from this and other jurisdictions bearing upon the question there involved.

The above announced rule was followed in Young v. Jefferson County, Tex.Civ. App., 164 S.W.2d 51, where an elaborate discussion of the facts is given in a situa-

tion very similar to the one before us. That court held it to be reversible error for the trial court to exclude testimony which tended to show that the land in question, because of its location, was suited and adapted to uses which gave it a greater value than pasturage purposes for which the owner had previously used it. Similar holdings are found in Aycock v. Houston Lighting and Power Co., Tex.Civ.App., 175 S.W.2d 710, writ refused, w. o. m., and City of Fort Worth v. Charbonneau, Tex.Civ. App., 166 S.W. 387, writ dismissed.

There is no complaint by appellant that the awards to the respective appellees were excessive but only that the testimony as to value of the land for subdivision purposes was erroneously admitted because, it is argued, it was too remote and speculative. Under the circumstances involved in this case we think the testimony was admissible in arriving at the reasonable value of the land taken and that remaining after appellant laid its pipe line both before and after such taking and construction of the pipe line. The second point of error is overruled.

Finding no error in the record, the judgment of the trial court is affirmed.