**BENNETT v. HOOD et al.**

No. 4733.

Court of Civil Apeals of Texas.
Beaumont.

March 29, 1951.

588

M. M. Feagin, Livingston, for appellant.

V. A. Collins, Livingston, for appellees.

R. L. MURRAY, Justice.

This is a suit in trespass to try title brought by Nettie Mae Hood et al., the appellees, against Sid Bennett, appellant, for title and possession of a tract of land in Polk County. The parties stipulated that title to the land was vested in Henry Collins, deceased, at the time of his death. Appellees asserted title to the land by virtue of a quitclaim deed to them from George Collins. The appellees also introduced testimony tending to show that George Collins was the son of the said Henry Collins, deceased, and Lucy Collins, his mother. They introduced evidence tending to prove that Henry Collins and Lucy Collins had lived together as man and wife and that their father, George Collins, was the legitimate son of the common-law marriage of Henry and Lucy Collins. The case was tried to a jury and upon findings by the jury favorable to the appellees the court rendered judgment in their favor.

After the appellant's amended motion for a new trial was overruled he duly perfected his appeal to this court for review.

The only controversy before us concerns the testimony of George Collins, the father of the appellees. The appellant attacks the admissibility of his testimony, the sufficiency thereof and the correctness of the court's charge which submitted the issue raised by such testimony.

George Collins was a Negro man 79 years old at the time of the trial. Before the instant suit was filed by his children, George Collins first filed suit against Sid Bennett, appellant, for the same land involved here. Upon the advice of his attorney, he dismissed that suit, conveyed the land to his two children and three grandchildren by quitclaim deed and thereafter this suit was filed by said children and grandchildren, the appellees. He testified at length in regard to his early boy-

hood, when he lived in the same home with his father and mother, Henry Collins and Lucy Collins. The gist of this testimony was that as far back as he could remember the father and mother were living together at the Havis place and that the family then consisted of his father and mother, his grandmother, himself and his four brothers; that the whole family except his brother Wash, who died on the Havis place, moved over to the land in controversy, and lived there as a family until he was a big boy; that his father and mother then separated and his father then went to Oklahoma for two years; that the father fed and clothed all the boys; all of them except George died during their boyhood, and that his father buried each one of them in the Lillie Island Graveyard nearby. All of this testimony was received without any objection by the appellant until after he testified that he had deeded the property to his children because his lawyer had told him, in effect, that he would not be allowed to testify to those facts if he were still the party at interest in the lawsuit. At that point appellant moved to strike "all this testimony from the record."

▐ From George Collins' testimony and that of his attorney it is established that the original suit by him was dismissed and the property deeded to the appellees at the suggestion and on the advice of their attorney. We think it is equally well established from that same testimony that the conveyance was actually made and that George Collins no longer had any interest in the land sued for. George testified that he was getting old and couldn't see and he gave it to his children, that they didn't need to pay him anything for it, and also testified that he had done so on advice of "a man that had more sense than he did." His attorney testified that originally George's son came into his office and got him to file the suit for the land; that he had not seen old man George at that time and filed the suit in his name; that later the son brought George to his office and he talked to him and then he decided to dismiss that suit and have him convey the land to his children. He tes-

tified that he explained to George that there were a good many things that he wanted George to testify to that the law might bar him from testifying to if he were the one bringing the suit; that the children gave him nothing for the land but he did make them a deed; that he explained to the old man that the deed must be a gift and he must not expect anything from it and that there was not any understanding that George was to profit by it in the future.

The appellant contends that George's testimony was inadmissible by virtue of Article 3716, Revised Civil Statutes of Texas, which is commonly referred to as the "dead man's statute," and that such testimony did not become admissible because of the deed to the appellees by George. He says in his argument that such conveyance was not made in good faith and did not serve to make the testimony admissible. He relies upon the cases of Cooper Grocery Co. v. Neblett, Tex.Civ.App., 203 S.W. 365, 368; Sheffield v. Leech, Tex.Civ.App., 221 S.W.2d 789; General Bonding & Casualty Co. v. McCurdy, Tex.Civ.App., 183 S.W. 796, 799. We overrule both of appellant's first and second points, which argue these contentions. We think it is well settled that it is immaterial that the witness George Collins might have conveyed to appellees his interest in the property primarily for the purpose of removing his disability as a witness under the statute. The inquiry as to the good faith of such a transaction relates not to the motive prompting the conveyance but only to the question as to whether a conveyance was actually made. Ragsdale v. Ragsdale, 142 Tex. 476, 179 S.W.2d 291. If the conveyance was not simulated or fictitous but divested the grantor of all direct and beneficial interest in the property, the grantor is not disqualified as a witness regardless of the motivating impulses influencing the conveyance. As was said in the Ragsdale case, supra, there are no facts in this case to show or raise the issue that title to the land did not pass out of George Collins by the quitclaim deed he gave to the appellees.

■ For another reason we do not believe it was error for the trial court to overrule appellant's motion to strike all the testimony of George Collins. The testimony, covering the first 54 pages in the statement of facts, was received without objection. Some portions of such testimony would not have been objectionable even if George Collins had been shown to be an interested party and prohibited from testifying by the statute. A motion to strike all the testimony of a witness when some of it is admissible and some is not will not be sustained where the motion does not point out the inadmissible testimony. Wells v. Hobbs, 57 Tex.Civ.App. 375, 122 S.W. 451.

■ The appellant by his third and fourth points says the trial court erred in refusing to give in its charge to the jury appellant's special requested issue which would have inquired whether George Collins acted in good faith in deeding the land to his children and grandchildren. As pointed out above on authority of Ragsdale v. Ragsdale, supra, such an inquiry as to good faith must go to whether a deed was actually executed and not as to motives which prompted its execution. We think no facts are in the record raising such an issue and no error is shown by these points and they are overruled.

■■ Appellant's fifth point is as follows: "The court erred in overruling and in failing to sustain appellant's objections to the definition given by the court in connection with Special Issue No. 1, said definition being deficient and defective for it fails to include the element that the parties would be required to live together 'professedly' as man and wife in order that a marriage would be the result of such living together." His sixth point complains of the trial court's action in overruling his objection to the court's definition in the charge in connection with Special Issue No. 1. The court submitted only two issues to the jury in its charge. Such issues and the answers of the jury thereto were as follows:

### Special Issue No. 1

Do you find from a preponderance of the evidence that Henry Collins and the mother of George Collins, Lucy, lived with each other as man and wife?

Answer "Yes" or "No."

Answer *Yes*.

In answering the foregoing Special Issue, you are instructed that it is not necessary that a marriage be a ceremonial marriage by the issuance of a marriage license and performed by a minister or any officer authorized to solemnize such marriage.

That a marriage can be constituted by parties entering into an agreement between themselves, either expressed or implied, to take each other for husband and wife during their lives, followed by a cohabitation as husband and wife, and holding each other out to the public as their respective spouses.

If you have answered the preceding Special Issue No. 1 "Yes," and only in that event, then answer:

### Special Issue No. 2

Do you find from a preponderance of the evidence that George Collins was born to Henry Collins and Lucy Collins while man and wife?

Answer "Yes" or "No."

Answer *Yes*.

The appellant contends under his fifth point that "a common-law marriage cannot be consummated until there has been a profession by the parties entering into the marriage contract by which the public might be put on notice of such parties' intention to take each other as husband and wife and that any definition given wherein the element 'professedly' is omitted is deficient and defective." We believe there is ample evidence in the record to support both findings of the jury. We also believe that the court's definition includes the idea suggested by the appellant, since in the definition is included the phrase "and holding each other out to the public as their respective spouses." This point is overruled.

The appellant contends in his sixth point that the court's definition of Special Issue No. 1 is also defective and subject to his objection thereto, that it advises and instructs the jury that there was a marriage in the court's opinion and is upon the weight of the evidence. We do not believe the definition in the court's charge is subject to the complaints made by appellant and this point is overruled.

The judgment of the trial court is affirmed.