**GUADALUPE VALLEY ELECTRIC COOPERATIVE, INC., Appellant,**

v.

**James Phillip TOWNS, III, et ux., Appellees.**

**No. 131.**

Court of Civil Appeals of Texas.

Corpus Christi.

Dec. 8, 1965.

John A. Romberg, Gonzales, for appellant.

Roger M. Dreyer, Gonzales, for appellees.

GREEN, Chief Justice.

This is a suit for damages to land. On or about June 21, 1962, appellant, through its agents and employees, entered upon appellees' 12.941 acre tract of land in Gonzales County, Texas, and cut a number of trees of various kinds and sizes in the process of clearing a right of way for construction of a distribution line. It was found by the trial court at a pre-trial hearing that appellant had acted without authority or right, and by a preliminary order all issues except those of damages were eliminated from the trial. At the close of the evidence three special issues were submitted to and answered by the jury. Issue No. 1 inquired as to the market value of appellees' property immediately before the trees were cut; issue No. 2 asked such value immediately after the trees were cut; and issue No. 3 asked as to the amount that would compensate appellees for the time and money reasonably and necessarily spent in supervising and planning the clean-up operations. To these issues the jury answered (1) $14,000.00; (2) $12,000.00; (3) $500.00. Judgment was rendered for appellees for $2,500.00, with interest at 6% per annum from date of judgment.

Appellees' property is located on a lake created by a dam on the Guadalupe River. At the time of the tree cutting, there were a number of privately owned resort houses in the area of appellees' land. Although appellees' property extends to the lake, the portion actually damaged was on a flat bluff about 90 feet above the water. The lower part adjoining the water and below the bluff contained deep ravines and a large gully, and was not suitable for building sites. Appellee Towns testified that his main purpose in securing this property, a year being spent by him in blocking it up, was to subdivide the flat upper part into six building lots, develop them as rental property as a lakeside resort, and build a road over the bluff to the lake to give the property access to the water. Construction had been commenced on the road, which at the time of the trial was approximately 75% completed. The evidence was abundant that the value of the upper lots as building sites for a resort development was materially reduced as a result of the loss of the trees.

Appellant's first point alleges error in the action of the trial court in overruling its objection to the testimony of appellees' witness Knight. The second point complains of the court's overruling its motion, made after both parties had rested, to strike the testimony of appellees' witnesses Knight and Wiley.

Knight on direct examination testified that he was a real estate broker in Gonzales, that he had seen the property both by himself and with appellees, was familiar with the area where the trees were cut, and saw evidence that a number of trees had been cut; that the plat in the record accurately described appellees' property; that he was familiar with real estate values in the area of property; that appellees' land was susceptible to having access to the water and that he had seen the road under construction to the water edge, and that the land was desirable as lakeside property. He stated that the six lots situated on the bluff where the trees were cut were each damaged a minimum of $500.00, and that the entire tract had a value of $15,000.00 before

the damage, and 12 or maybe 11 thousand after:

On cross-examination, Knight stated that he was predicating his testimony of value upon access to the waterfront being completed, and that the improvements had not been completed on June 21, 1962, the date the trees were cut. He stated he could not testify as to the condition of the property on June 21, 1962, as he was not familiar with the property at that time.

Appellant thereupon made the following motion to the trial court: "If the Court please, I believe that testimony should be stricken from the record. It is evidence that the witness is not testifying as to the market value as of that date, nor has he allowed any for the expense of making the subdivision or various other things. His statement is (sic) as to market value is predicated on a condition that did not exist." This motion, or objection as appellant terms it, was overruled, and exception duly taken. Appellant briefs the point as though this was an objection to all of Knight's testimony given on direct examination of value of the property, though none of the evidence on direct examination was particularized in the objection or motion to strike. We feel that the motion is concerned more with the weight of Knight's evidence than to its admissibility. Culver v. State, Tex.Civ.App., 324 S.W.2d 921; Foley Bros. Dry Goods Co. v. Settegast, Tex.Civ.App., 133 S.W.2d 228, p. 233, writ ref.

█ However, if portions of Knight's evidence had been subject to proper objection, no such portions were designated by appellant. A motion to strike the evidence of a witness not specifying the particular testimony to be struck is too general, and overruling such a motion is not error. The trial court is not called upon to cull out a particular part of the evidence upon a motion to exclude. Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 623, 36 L.R.A. 64; Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Tex. 393, 43 S.W. 877; Foley Bros. Dry Goods Co. v. Settegast, supra; Waller v.

Summers, Tex.Civ.App., 299 S.W.2d 752, writ ref. n. r. e. If the evidence is admissible in part, and inadmissible in part, and the motion to strike is general, going to the whole, the motion should be overruled where it does not specifically point out the inadmissible testimony. Texas Pipeline Co. v. Ennis, Tex.Civ.App., 44 S.W.2d 773, writ dism.; Bennett v. Hood, Tex.Civ. App., 238 S.W.2d 587; Waller v. Summers, Tex.Civ.App., supra.

Appellees' witness Wiley testified on direct examination that he owned developed property on the lake, and was familiar with value of lakeside land in that area. He had been familiar with appellees' property before and after the trees were cut. He stated that appellees' property was suitable for lake cottages, and summer homes. He testified in part as follows:

"Q In your opinion, Mr. Wiley, what was the fair market value of this entire tract of Mr. Towns's before the trees were cut?

A Well, I would have to say this: He was making an incline to the water, which increased the value of his lots and since no lots are available, people are hunting lots. I think I could safely say 12 or 13 hundred dollars a lot on those.

Q What would that make the entire property worth as a unit?

A 13 or 14 thousand dollars.

Q 13 or 14 thousand?

A Yes.

Q Do you have an opinion as to what the value of this property was worth after the trees were cut?

A Well,—

Q Do you have an opinion?

A For lake property, you buy the property for the lake and for the shade trees. I would think it would decrease

it. I would want a tree on mine. It would decrease it 50 percent.

Q You have an opinion?

A It would be in my opinion. It would lessen my desire to buy one with the trees off of it."

On cross-examination, Wiley stated that his testimony of value of the property was "with access to the water." Without such access the value would be less. In this connection, we quote from his evidence as follows:

"Q You can't think of any lots that didn't have water frontage that were leased?

A Well, they were all had water frontage, but some of them couldn't get to the water as well as others could.

Q Now, in order to permit access from these lots to the water there would have to be a great deal of work done, would there not, Mr. Wiley?

A Yes, sir.

Q Would that be an expensive job?

A It would be expensive, yes, sir, bulldozing.

Q Well, now, are you putting this value on there as without taking into account the cost of that?

A I would take that into account. In other words after it is developed for that purpose, if he is going to sell them he would have to get that to come out.

Q In other words, after they are developed, they would be worth that?

A Yes, sir."

No objection to any part of Wiley's evidence was made by appellant. However, after all of the evidence was in, and both parties had rested, and all witnesses excused, the following proceedings occurred:

"MR. ROMBERG: The Defendant moves that the testimony of the witnesses, Caroll Wiley and Richard Knight, be stricken from the record, because it shows on its face that it was made in view of a proposed subdivision which did not actually exist. It attempted to show the retail value of a processed subdivision and did not give any evidence as to the cost of placing the property in a subdivided condition. It did not give the expense of the acrage or the expense of constructing roads and ramps to the water's edge. It did not give the expense of constructing, subdividing, surveying, and creating a subdivision and as such, gives no relevant testimony from which the jury could arrive at the market value as of June, 1962.

THE COURT: That motion will be overruled.

MR. ROMBERG: Note our exception."

The motion to strike was general, being directed to all of the testimony of Knight and Wiley. For the reasons heretofore stated as to the first motion or objection concerning Knight's testimony, the court properly overruled the motion to strike the evidence of Knight and Wiley. Also, the motion was not timely made. Collins v. Smith, 142 Tex. 36, 175 S.W.2d 407.

Though the evidence disclosed that the subdivision of the land suitable for development on the bluff did not actually exist, and the road to the lake had not been completed, when the damage was done, appellee's testimony and that of Knight and Wiley, and other witnesses, showed clearly that the land was adaptable to such subdivision and development, and that its highest and best value was as a resort for lakeside cottages. Appellee testified he had purchased and blocked up this property with just that purpose in mind. At the time the trees were cut, he had started the improvements necessary to secure water access to the usable land on the bluff which he purposed to develop. Such land at that time,

even though the improvements had not been completed, was valuable for the purpose to which it was most adaptable, and the testimony of the witnesses Knight and Wiley as to such value was admissible as probative evidence under the circumstances. State v. Carpenter, 126 Tex. 604, 89 S.W.2d 194; City of Austin v. Cannizzo, 153 Tex. 324, 267 S.W.2d 808; Lower Colorado River Authority v. Hughes, Tex.Civ.App., 122 S.W. 2d 222, writ dism.; Continental Pipe Line Co. v. Kiel, Tex.Civ.App., 227 S.W.2d 825; Tennessee Gas Transmission Co. v. Adamsen, Tex.Civ.App., 262 S.W.2d 445; Foley Bros. Dry Goods Co. v. Settegast, supra. As stated in Culver v. State, Tex.Civ.App., 324 S.W.2d 921:

> "The fact that appellants would have to drill a well or wells, or contract with a third party to get sufficient water, and the fact that some leveling would have to be done to make the 211 acres ready for rice growing merely go to the weight of appellant's testimony that the land was adaptable to rice farming."

In City of Austin v. Cannizzo, supra, a condemnation suit involving property in an area zoned so that a shopping center could not be built on the property, witnesses were permitted by the trial court to testify of its value including its adaptability as a shopping center. In upholding the ruling of the trial court, the Supreme Court said in part:

> "If the trial judge is satisfied from the evidence as a whole that there is no reasonable probability that existing restrictions may be lifted within a reasonable time, he should exclude evidence of value based on use for any purposes other than those to which it is restricted. On the other hand, if it appears reasonably probable to the trial judge that the wants and needs of the particular community may result, within a reasonable time, in the lifting of the restrictions, he should admit testimony of present value based on prospec-

tive use of the property for purposes not then available. * * *"

For the reasons stated the trial court did not err in denying appellant's motions to strike the testimony and points 1 and 2 are overruled.

By its sixth and seventh points of error appellant contends that the evidence is insufficient, legally and factually, to support the jury's answers to special issues No. 1 and No. 2, inquiring as to the value of the property before and after the trees were cut. Garza v. Alviar, Tex.Sup.Ct., 1965, 395 S. W.2d 821.

In addition to the testimony on value heretofore detailed, appellee, after qualifying as competent to give his opinion, in answer to an inquiry as to the market value of his property before the trees were cut, stated: "The land should have brought me $16,-500.00", and that the market value after the trees were cut was $12,500.00. No objection was addressed by appellant to this testimony, nor was appellee cross-examined as to such answers.

Appellant offered a number of qualified witnesses on value, all of whom placed a much lower figure on appellees' damages than did appellee and his witnesses. We have carefully considered all of the testimony included in the statement of facts and the exhibits of both parties, and find that the evidence is legally and factually sufficient to support the answers to special issues No. 1 and No. 2.

Appellant's sixth and seventh points are overruled.

By its 3rd, 4th, and 5th points, appellant makes the contention that the answer of the jury to special issue No. 3 was without support in the evidence both legally and factually, and that such answer was grossly excessive. By their answer to this issue, the jury found that $500.00 was the amount which would compensate appellees for the time and money reasonably and necessarily

spent in supervising and planning the clean-up operations on the premises after the trees had been cut.

Appellee Towns testified that appellant agreed to clean up "the mess" caused by the trees being cut, but that in so doing, the employees had orders from appellant not to do anything without his being there to supervise the work. He made 21 trips to the property, which was 14 miles from his place of business, many at appellant's request, but his testimony does not show the purpose of such trips, or that more than two or three were connected with the cleaning-up operations. A number of said trips were in regard to the location of a new electric line on his premises, and for other purposes not connected with such clean-up. He testified that he was away from his business about 80 to 100 hours while making the 21 trips, during which time he had to pay extra help at his place of business an amount between $75.00 to $200.00, but again he declined to estimate how much of the time or money was spent due to his going to see about any supervising the cleaning up his land due to appellant's cutting the trees.

Appellee offered no evidence of the value of his time and services. There was no evidence of the reasonable expense incurred by him on any of his trips. No proof was made that the amount he paid to the help he employed during his absence from his business was reasonable. The burden was on appellees to present sufficient evidence of the amount and extent of his reasonable and necessary expenses spent in supervising and planning the clean-up operations in order to enable the jury to base its verdict on an intelligent judgment, not mere conjecture. Dickey v. Jackson, Tex.Com. App., 1 S.W.2d 577; Phoenix Refining Co. v. Tips, Tex.Civ.App., 66 S.W.2d 396; Dalby v. Lyle, Tex.Civ.App., 105 S.W.2d 764.

We hold that the answer of the jury to special issue No. 3 is not supported by the evidence, either legally or factually, and that the amount of the judgment entered below should be decreased by $500.00.

The judgment of the trial court is reformed, so that the amount of recovery is $2,000.00 with interest at 6% per annum from July 3, 1964, the date of the decree. Costs of this appeal are assessed 80% against appellant, and 20% against appellee.

Reformed and affirmed.