DALLAS COUNTY, Texas, Appellant,

v.

CRESTVIEW CORNERS CAR WASH (a Texas Joint Venture); Trinity Mills Car Wash, Manager of Venture; THS Management, Inc., a Texas Corporation; and Warren Limited Liability Co., a Texas Corporation, Appellees.

No. 05–09–00623–CV.

Court of Appeals of Texas, Dallas.

Feb. 16, 2012.

Opinion on Rehearing July 24, 2012.

Sherri Turner, Dallas, TX, for Appellant.

Joe H. Staley, Jr., Law Office of Joe H. Staley, Jr., Dallas, TX, for Appellee.

Before Justices MOSELEY, BRIDGES, and O'NEILL.

## OPINION

Opinion By Justice MOSELEY.

Dallas County condemned a portion of appellees'[1] property for the purpose of widening Trinity Mills Road in Carrollton. Following a jury trial, the trial court rendered judgment and awarded the County a permanent easement and street right-of-way over a portion of Crestview's real property. It also awarded Crestview the stipulated value of the portion taken, plus damages to the remainder of the property, damages caused by a temporary but total denial of access to the property, prejudgment interest, and costs. The County appeals the judgment, arguing the trial court erred by excluding and admitting certain evidence, by overruling its objections to closing argument, charging the jury, and in calculating prejudgment interest and costs.

Based on the record, we conclude as a matter of law that Crestview's access rights will not be materially and substantially impaired by the taking. Accordingly, we reverse that portion of the trial court's judgment awarding: (1) damages for impaired access and (2) prejudgment interest, and remand that portion of the case to the trial court for further proceedings consistent with this opinion. However, in all other respects we affirm the trial court's judgment.

## I. Background

Crestview operates a full-service car wash at the corner of Trinity Mills and Midway. The County sought to acquire a portion of this property to widen Trinity Mills. When it was unable to reach agreement on the amount of damages, the County filed a petition to condemn part of the property. *See* Tex. Prop.Code Ann. § 21.012(a)[2] (West Supp. 2011). Special commissioners awarded Crestview $600,000 as damages for the property. *See id.* § 21.014. The County filed an objection to the commissioners' award, converting the administrative proceeding into a civil case to be tried "in the same manner as other civil causes." *See id.* § 21.018(b).

Before trial, both parties filed objections to the other party's expert appraisers. Crestview argued the County's appraiser did not use the willing buyer/willing seller standard to calculate damages to the remainder of the property after the taking. The County argued Crestview's appraiser used unpled and improper elements of damage in his calculation of damages to the remainder of the property. After pretrial hearings, the trial court denied the County's objections and granted Crestview's objections. The parties stipulated to the fair market value of the strip of property taken by the County and the case went to trial on the issue of the amount to damages to the remainder of Crestview's property caused by the taking.

Before the taking, the property was used as a full-service car wash, including state inspection and detailing services. There was evidence that as a result of the taking, the property could no longer be used for state inspections or detailing services because the land taken included part of the lane used for brake testing and the

---

1. Appellees are Crestview Corners Car Wash (a Texas Joint Venture), Trinity Mills Car Wash, Manager of Venture, THS Management, Inc., a Texas Corporation, and Warren Limited Liability Co., a Texas Corporation. They will be referred to collectively as Crestview.

2. Section 21.012 has been amended since the proceeding at issue in this appeal. We cite the current statute for convenience unless there is a material change in the prior law applicable to this appeal.

remaining area was insufficient for the detailing services.

There was also evidence Crestview removed underground gasoline storage tanks located on the remainder because their proximity to the new road construction created a safety hazard.[3] Crestview characterized the cost of removing and replacing the storage tanks as damages for the cost to cure an unsafe condition caused by the taking and included these damages in its evidence regarding the lost fair market value of the remainder.

In addition, Crestview sought damages for a temporary but total denial of access to the property during the period of road construction. These damages were based on the estimate that the interruption of utilities during construction and dust caused by construction work would render the property unusable as a car wash for one year.

The jury found that the damages to the remainder of Crestview's property were $765,320.50 measured by the difference between the fair market value of the remainder immediately before and immediately after the taking, including the cost to cure. The jury charge defined "cost to cure" as damages reflecting any necessary modifications to the remainder to cure any unsafe conditions created by the condemnation. In a separate question, the jury was asked to find the damages to Crestview's property "that will be proximately caused by any temporary but total restriction of access to the Landowner's property resulting from the subject condemnation." The jury found those damages were $108,307.00. The trial court rendered judgment for the total of the jury's verdict, plus the stipulated value of the property taken and prejudgment interest on the amount in excess of the commissioners'

award, gave a credit for the commissioners' award, and awarded costs of court to Crestview.

## II. ISSUES PRESENTED

The County's issues on appeal assert the trial court abused its discretion by: (1) excluding the County's expert appraisal witness; (2) admitting Crestview's expert appraisal witness; (3) admitting the property owner's testimony; (4) admitting testimony regarding the underground storage tank system; and (5) admitting testimony regarding the temporary but total restriction of access. In addition, the County asserts the trial court erred by overruling its objections to Crestview's closing argument and by defining "cost to cure" in the jury charge, and that the trial court abused its discretion by awarding prejudgment interest and costs.

## III. APPLICABLE LAW AND STANDARD OF REVIEW

The Texas Constitution requires that adequate compensation shall be made if a person's property is "taken, damaged or destroyed for or applied to public use." TEX. CONST. art. I, § 17. When a portion of a tract of real property is condemned, the damage to the property owner is determined by "estimating the extent of the injury and benefit to the property owner, including the effect of the condemnation on the value of the property owner's remaining property." TEX. PROP.CODE ANN. § 21.042(c); see also Interstate Northborough P'ship v. State, 66 S.W.3d 213, 218 (Tex.2001). In making that estimate, the commissioners shall consider an injury or benefit "that is peculiar to the property owner and that relates to the property owner's ownership, use, or enjoyment of the particular parcel of real property, but they may not consider an injury or benefit

---

**3.** New storage tanks will be installed after the road construction is completed.

that the property owner experiences in common with the general community." Act of May 26, 1983, 68th Leg., R.S., ch. 576, § 1, sec. 21.042(d), 1983 Tex. Gen. Laws 3475, 3504 (amended 2011) (current version at TEX. PROP.CODE ANN. § 21.042(d) (West Supp. 2011)).

■ The measure of compensation in a partial-takings case is "the market value of the part taken plus damage to the remainder caused by the condemnation." *State v. Petropoulos,* 346 S.W.3d 525, 530 (Tex.2011) (quoting *Westgate, Ltd. v. State,* 843 S.W.2d 448, 456 (Tex.1992)). There are two acceptable methods for calculating damages in a partial takings case. The first method measures damages by the fair market value of the part taken plus damages to the remainder caused by the condemnation. *Id.* The second method measures damages by the difference between the market value of the entire tract before the taking and the market value of the remainder after the taking. *Id.* The second method is preferable when the part taken does not constitute a separate economic unit, such as when the tract taken is small or irregularly shaped. *Id.* In this case, it appears the trial court used the first method because the value of the part taken was stipulated and the jury was asked to find the damages to the remainder by considering the difference between the fair market value of the remainder immediately before and immediately after the taking.

Several of the County's issues allege error in admitting or excluding evidence. We review the trial court's decision to admit or exclude evidence for an abuse of discretion. *See Interstate Northborough,* 66 S.W.3d at 220; *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995); *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989). For the admission or exclusion of evidence to consti-

tute reversible error, the complaining party must show that (1) the trial court committed error and (2) the error probably caused the rendition of an improper judgment. TEX.R.APP. P. 44.1; *State v. Cent. Expressway Sign Assocs.,* 302 S.W.3d 866, 870 (Tex.2009); *Interstate Northborough,* 66 S.W.3d at 220. We review the entire record to determine if the error probably resulted in the rendition of an improper judgment. *Cent. Expressway,* 302 S.W.3d at 870; *Interstate Northborough,* 66 S.W.3d at 220. Typically, a successful challenge to a trial court's evidentiary rulings requires the complaining party to demonstrate that the judgment turns on the particular evidence excluded or admitted. *Texas Dep't of Transp. v. Able,* 35 S.W.3d 608, 617 (Tex.2000); *Alvarado,* 897 S.W.2d at 753–54.

■ The County's issues also raise questions of the admissibility of expert witness testimony. To be admissible, the expert must be qualified and his or her opinion must be relevant and reliable. *See Cent. Expressway,* 302 S.W.3d at 870; *Exxon Pipeline Co. v. Zwahr,* 88 S.W.3d 623, 628 (Tex.2002). To be relevant, the expert's opinion must be based on the facts; to be reliable, the opinion must be based on sound reasoning and methodology. *Cent. Expressway,* 302 S.W.3d at 870; *Zwahr,* 88 S.W.3d at 629. We review a trial court's determination that a witness's testimony is unreliable for an abuse of discretion. *Cent. Expressway,* 302 S.W.3d at 870; *Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 499 (Tex.2001). A trial court abuses its discretion in excluding expert testimony if the testimony is relevant to the issues in the case and is based on a reliable foundation. *Zwahr,* 88 S.W.3d at 628; *Helena Chem. Co.,* 47 S.W.3d at 499.

## IV. Discussion

### A. Exclusion of the County's Appraisal Expert

■ In its first issue, the County argues the trial court erred by excluding its appraisal expert, Grant Wall. Crestview moved to strike Wall's testimony about damages to the remainder because he did not apply a willing buyer/willing seller method to determine the remainder damages.

Wall appraised the entire property before the taking using all three accepted appraisal methods.[4] Crestview does not complain about this portion of his appraisal, nor about his appraisal of the value of the portion of the property taken. Wall then valued the remainder after the taking. He concluded the improvements would comply with zoning setback requirements after the taking, but the taking would eliminate one of the five lanes on the property. He then divided the value of the whole property by the number of lanes (five) to determine a "value per lane," subtracted the value of the part taken from the value per lane, and concluded the estimated damage to the remainder was $170,000.[5] He then simply subtracted the $170,000 figure plus the value of the part acquired, from the results of each of the three appraisal methods he used to value the whole property to arrive at his value of the remainder immediately after the taking. In the County's offer of proof, Wall explained: "And because they were losing one lane, I took the value of the whole property, divided by five, gives me the value of one lane. I took that as an adjustment factor to apply to the valuation of the remainder after the take."

The County argues that Wall arrived at the fair market value of the remainder after the taking by analyzing the sales comparison, cost, and income appraisal methods and this analysis is shown in his report. Crestview says Wall's report does not reflect that he used accepted appraisal

4. These methods are summarized as follows: Texas recognizes three approaches to determining the market value of condemned property: the comparable sales method, the cost method, and the income method. The comparable sales method is the favored approach, but when comparable sales figures are not available, courts will accept testimony based on the other two methods. The cost approach looks to the cost of replacing the condemned property minus depreciation. The income approach is appropriate when the property would be priced according to the rental income it generates. *All three methods are designed to approximate the amount a willing buyer would pay a willing seller for the property.* *State v. Cent. Expressway Sign Assocs.,* 302 S.W.3d 866, 871 (Tex.2009) (citations omitted, emphasis added).

5. Wall explained his methodology in his report:

The acquisition area eliminates the "brake testing" lane which also serves as the perimeter drive that provides ingress and egress to the subject from the west side of the property at the west drive entrance. Without this perimeter drive, cars entering the subject from the west driveway would be in conflict with cars going into the wash tunnel from the vacuum lanes. This reduced area and maneuverability on the subject site is felt to adversely affect the value of the real estate component of the subject. There is insufficient area on-site in which to alter the existing stack lanes and perimeter drive.

In order to arrive at an appropriate diminution in value, the estimated value of the real estate was considered on a per drive lane basis and a hypothetical "set back" basis.

**Price Per Drive Lane**

The estimated value of the subject whole property is $1,280,000. The subject has 5 drive lanes (4 stack lanes and the perimeter drive). This value equates to $256,000 per drive lane. The loss of one drive lane would equate to $256,000 less the estimated value of the items already accounted for in the "Part Acquired". Therefore:

$256,000–$83,270 (items in part acquired) = $172,730, **say $170,000.**

methods in valuing the remainder after the taking and his report reflects that he merely subtracted one-fifth of the pre-taking value.

■■■ An expert's "bald assurance" that he used a widely accepted appraisal method is not sufficient to demonstrate that his opinion is reliable. *Guadalupe–Blanco River Auth. v. Kraft,* 77 S.W.3d 805, 808 (Tex.2002). We must look beyond an expert's assertion that the data underlying his or her opinion are the type of data on which experts reasonably rely. *Id.* (quoting *Merrell Dow Pharm., Inc. v. Havner,* 953 S.W.2d 706, 713 (Tex.1997)). Instead, the underlying data must be independently evaluated in determining if the opinion itself is reliable. *Id.*

We have examined the report, Wall's underlying data and methodology, the arguments at the pretrial hearings, and Wall's testimony in the offer of proof. We cannot find where Wall applied the accepted appraisal methods to arrive at the fair market value of the remainder after the taking. Instead, Wall simply took the market value of the whole before the taking and assumed—without any basis—that a willing buyer and willing seller would agree to reduce the market value by one-fifth for the loss of the perimeter lane. Thus, Wall reached an unsupported conclusion on the damages to the remainder first, then applied that unsupported conclusion to the accepted appraisal methods he had done on the property as a whole. Although Wall's report has sections for the cost, income, and sales approaches after the taking, each section merely subtracts the $170,000 figure and the value of the part taken from the values previously determined for the property as a whole before the taking.

The County cites *State v. Target Corp.,* 194 S.W.3d 46 (Tex.App.-Waco 2006, no pet.), to argue this method has been approved. *Target* is not on point. That case involved whether the trial court erred by excluding the state's expert witness for failure to timely disclose his calculations. *Id.* at 48–49. The Waco Court of Appeals concluded the trial court abused its discretion in excluding the expert because Target obtained the calculations and had deposed the witness again before trial, thus it was not unfairly surprised by the late supplementation. *Id.* at 50–51. In a footnote, the court of appeals discussed the expert's opinion that Target's damages for parking spaces taken by the State should be reduced because of a twenty percent utilization factor. *Id.* at 52 n. 5. The court concluded the expert's opinion was not unreliable because he used a yearly average income per parking space as opposed to considering the income lost during peak volume periods. *Id.* (The expert explained that net operating income is based on rental income that does not vary during the year.) We see no similarity between the method discussed in *Target* and that used by Wall.

■■■ "[A] claim will not stand or fall on the mere *ipse dixit* of a credentialed witness." *Burrow v. Arce,* 997 S.W.2d 229, 235 (Tex.1999). The record supports the conclusion that Wall's testimony and report constitute just that. We conclude the trial court did not abuse its discretion by excluding Wall's testimony on damages to the remainder.[6] Accordingly, we overrule the County's first issue.

---

6. The County claims the trial court abused its discretion by refusing to permit Wall to testify at the pretrial hearing. We disagree. It is within the trial court's discretion whether to conduct an evidentiary pretrial hearing when an expert is challenged. *See Petropoulos,* 346 S.W.3d at 529 & n. 1. We conclude the trial court did not abuse its discretion in the manner of conducting the hearing.

## B. Admission of Crestview's Appraisal Expert

In its second issue, the County argues the trial court erred by admitting the testimony of Crestview's appraisal expert, James Archibald. The County argues that Archibald's opinion on the market value of the remainder after the taking includes lost profits of the car wash. It asserts the opinion is inadmissible because: (1) Crestview failed to plead that it was seeking to recover lost profits as damages; and (2) lost profits are not recoverable in condemnation cases as a separate element of damages. Crestview contends that the defendant in a condemnation case is not required to plead for damages to the remainder because the damages are allowed by statute. It also contends it did not seek to recover lost profits as a separate element of damages.

### 1. Lack of Pleading Contentions

██ As part of its second, fourth, and fifth issues, the County argues Crestview was required to plead that it was claiming lost profits, inverse condemnation of the underground storage tanks, and damages for a temporary total denial of access to the remainder.[7]

██ In condemnation proceedings, the landowner is not required to specifically plead damages, such as impaired access, because the damages are specified by statute. *See* TEX. PROP.CODE ANN. § 21.042; *Kennedy v. City of Dallas*, 201 S.W.2d 840,

841 (Tex.Civ.App.-Dallas 1947, writ ref'd n.r.e.) (landowner need not file written pleadings in condemnation cases because statute specifies items of damages she may recover and only issue is the amount of such damages); *Cont'l Pipe Line Co. v. Kiel*, 227 S.W.2d 825, 827 (Tex.Civ.App.-Fort Worth 1950, no writ) ("the objecting land owner need not file written pleadings because the damages he can recover are fixed by statute"). When a condemnor invokes its eminent domain authority to take another's property, it is charged with knowledge of the owner's measure of damage, and the court will infer that measure of damage from the facts asserted by the condemnor. *Kiel*, 227 S.W.2d at 827.

The record here indicates Crestview is not seeking to recover damages independent of its right to recover the market value of the land taken, damages to the remainder, and alleged damages for a total temporary denial of access. Crestview presented evidence that the remainder was damaged because the taking prevented it from performing all the services it had previously been able to perform on the property. It also contended the road construction on the part taken would create an unsafe condition on the remainder that required Crestview to remove and later reinstall the underground storage tanks. And Crestview claimed that construction of the roadway would result in a temporary total denial of access to its property.

---

7. The County cites *City of Austin v. Casiraghi*, 656 S.W.2d 576 (Tex.App.-Austin 1983, no writ), for the argument that the owner in a condemnation case must plead any claim of inverse condemnation or special damages. *Casiraghi* is not on point. In that case, the owners stipulated to the fair market value of the land and improvements thereon, including their restaurant, then presented evidence of the market value of the business apart from the land and improvements as damages recoverable in a statutory condemnation proceeding. *Id.* at 578. The jury found the landowners' business was taken by the city and the market value of the business *excluding the land and buildings thereon* was $130,000. *Id.* at 579. The court of appeals reversed the trial court's judgment awarding those damages for several reasons, including that there were no pleadings to support a claim for damages to the business independent of the owners' right to recover the market value of the three lots condemned by the city. *Id.*

These types of claimed damages are all damages to the remainder that have been allowed in condemnation cases. *See Interstate Northborough,* 66 S.W.3d at 220; *State v. Heal,* 917 S.W.2d 6, 11 (Tex.1996). We conclude the general rule that a landowner need not plead for such items of damage applies in this case. *See Kennedy,* 201 S.W.2d at 841; *Kiel,* 227 S.W.2d at 827. Thus the trial court did not err by overruling the County's objections to the lack of pleadings. We overrule the lack of pleading portions of issues two, four, and five.

## 2. Lost Profits

■ The County argues Archibald's opinion regarding lost profits was not relevant because lost profits are not recoverable in a condemnation action as a separate item of damage. Archibald testified that before the taking, the car wash performed several services including state inspections and detailing services. He said the taking will remove part of the perimeter lane used for brake testing and, as a result, the car wash will no longer be able to perform state inspections and the lane previously used for detailing services will have to be used for internal circulation. Archibald explained that as a result of the taking a willing buyer would pay less to a willing seller for the remainder because the property could no longer perform those inspection and detailing services.

To calculate the damages to the remainder flowing from Crestview's loss of the capacity to provide those services on the property, Archibald obtained the four-year average of the gross profits [8] for inspection and detailing services from the owner. He then divided those averages by an income capitalization rate of twelve percent, which

he derived from other clients such as Texaco, Shell, and Exxon. As he explained, "Once I got the income number divided by the improvement capitalization rate, then that gives you a loss, its functional and curable obsolescence. The building doesn't do as much as it used to do."

■ In condemnation cases, adequate compensation does not include profits generated by a business located on condemned land. *State v. Cent. Expressway Sign Assocs.,* 302 S.W.3d 866, 869 (Tex.2009). However, income from a business located on the property may be considered in two situations: (1) where the taking, damaging, or destruction of property causes a material and substantial interference with access; and (2) where only a part of the land is taken and lost profits demonstrate the effect on the market value of the remaining land and improvements. *See id.* at 871 (citing *City of Austin v. The Ave. Corp.,* 704 S.W.2d 11, 13 (Tex.1986) and *City of Dallas v. Priolo,* 150 Tex. 423, 242 S.W.2d 176, 179 (1951)). This case falls into the second category, as only a portion of Crestview's property was taken. Thus, although Crestview may not recover lost profits as a separate item of damage, it may use lost profits as evidence of the effect of the taking on the market value of the remainder. *See Priolo,* 242 S.W.2d at 179 ("injury to the business is admissible, not as a separate item of damage, but as affecting the market value of the remaining land and improvements for the uses to which they were adapted and were being put").

Archibald did not testify to lost profits as a separate element of damages. He presented evidence that the loss of inspection and detailing functions of the property will reduce what it would sell for in the

---

**8.** Archibald attempted to exclude good will from his calculations and said that net income did not include good will.

market. Because Archibald did not use lost profits as an independent element of damages, his opinion of the market value of the remainder was relevant.

The County argues that Archibald's opinions were not reliable because they were based on the assumption that Crestview would not be able to perform inspections and detailing as a result of the taking. It is not clear that the County raised this argument in the trial court by a timely, specific objection and obtained a ruling on this ground. *See* Tex.R.App. P. 33.1(a). However, Crestview's witnesses testified that after the road construction is complete and the underground storage tanks and gasoline pumps are reinstalled on the remainder, Crestview will be unable to perform state inspections on the property or to continue providing detailing services. The County presented some contrary evidence to the effect that nothing would prevent Crestview from performing state inspections or detailing after construction was completed. This conflicting evidence merely raised a question of fact and goes to the weight of Archibald's opinion testimony, not its admissibility. *See Polk Cnty. v. Tenneco, Inc.,* 554 S.W.2d 918, 924 (Tex.1977) (attack on figures underlying the expert's opinion testimony goes to the weight rather than to the admissibility of the testimony); *McKinney Indep. Sch. Dist. v. Carlisle Grace, Ltd.,* 222 S.W.3d 878, 882 (Tex.App.-Dallas 2007, pet. denied) (lack of supporting market data is factor for jury to consider in determining credibility of expert opinion).

Because Archibald did not present evidence of lost profits as a separate item of damages over and above the fair market value of the remainder, the trial court did not abuse its discretion in overruling the County's objections to his testimony. The County incorporates this lost profits argument in its third issue attacking the owner's testimony. The record does not show the County made a timely and specific objection to the owner's testimony on this ground. Thus, the argument is not preserved for appeal. Tex. R.App. P. 33.1(a).[9] In any event and for similar reasons, the owner's testimony did not include improper evidence of lost profits as a separate item of damage.

We overrule the County's second issue and that portion of third issue discussing lost profits.

## C. Admissibility of the Owner's Testimony

The County's third issue addresses the testimony of one of Crestview's owners, David Warren. Warren is the general manager of the car wash and a part-owner. Warren testified he was familiar with the car wash business, having owned and operated car washes for over thirty years. Warren testified the taking affected the value of the property because before the taking, the property could operate as a full service car wash, but after the taking, the property would no longer be able to do car inspections or detailing services. He said this lowered the value of the property in the market. He explained

---

**9.** The County filed a voluminous motion in limine that included any testimony about lost profits. However, a trial court's ruling on a motion in limine does not preserve error. *See State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 866 (Tex.1988); *Hartford Acc. & Indemn. Co. v. McCardell,* 369 S.W.2d 331, 335 (Tex. 1963). The motion in limine did not seek a pretrial ruling on the admissibility of evidence

as allowed by evidence rule 103. Tex.R. Evid 103(b); *see Greenberg Traurig of N.Y., P.C. v. Moody,* 161 S.W.3d 56, 91–93 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (explaining distinction between motion in limine and a pretrial ruling on admissibility). Thus, nothing is preserved for appeal by the trial court's ruling on the County's motion in limine.

that a willing buyer would not pay as much to a willing seller after the taking because the property would not support as many services. Warren testified to the fair market value of the remainder before and after the taking and the difference between those values.[10]

The County complains the trial court erred by allowing Warren to testify because: (1) he is not an appraiser; (2) he did not have a report; and (3) he did not have market data or evidence of sales in the market to support his testimony. The County's objections to Warren's testimony at trial were that there was "no foundation" for his opinion. The trial court overruled the objections and recognized that Warren was an owner of the property. We assume the "no foundation" objections were specific enough to encompass the arguments on appeal.

■■■■ A property owner is qualified to testify to the market value of her property if it is based on the owner's estimate of market value and not on some intrinsic or other value such as replacement cost. *Redman Homes, Inc. v. Ivy*, 920 S.W.2d 664, 669 (Tex.1996); *Porras v. Craig*, 675 S.W.2d 503, 504 (Tex.1984). The rule is based on the presumption that an owner will be familiar with her own property and know its value. *Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop Food Stores, Ltd.*, 337 S.W.3d 846, 852–53 (Tex.2011).[11] The owner testifies as a lay witness under evidence rule 701 to her opinion of the market value her property. *See* Tex.R. Evid. 701; *A.G.E., Inc. v. Buford*, 105 S.W.3d 667, 677 (Tex.App.-Austin 2003, pet. denied); *Barraza v. Koliba*, 933 S.W.2d 164, 169 (Tex.App.-San Antonio 1996, writ denied).

■■■■ The record indicates Warren did not testify to an intrinsic or some other value of the property. He explained he was testifying about what a willing buyer and willing seller would agree to pay for the remainder before and after the taking. Warren testified as an owner giving his lay opinion as to the market value of the property, not as an expert witness. Thus, he was not required to be an appraiser, to prepare an expert report, or to support his opinion with market data.[12]

We conclude the trial court did not abuse its discretion by overruling the County's objections to Warren's testimony. We overrule the remainder of the County's third issue.

## D. Unsafe Condition and Cost to Cure

Crestview contended that the underground storage tanks, and in particular the ventilation system, were located near the area of the taking and the vents would be within three to five feet of the new property line. Crestview contended that construction of the roadway so near the vents would create an unsafe condition on the

---

10. Warren also testified to cost of cure damages relating to the underground storage tanks and to damages for a total, temporary denial of access to the property. These damages will be discussed in detail below.

11. If the property is owned by a legal entity, only testimony "from an officer in a management position with duties that at least in some part relate to the property at issue, or an employee of the entity in a substantially equivalent position," falls within this property owner rule. *Speedy Stop*, 337 S.W.3d at 855.

12. Moreover, an expert's opinion is not inadmissible for lacking market data; the lack of market data merely goes to the weight of the testimony and is a factor for the jury to consider in evaluating the credibility of the expert's testimony. *See Carlisle Grace, Ltd.*, 222 S.W.3d at 882 (lack of supporting market data is factor for jury to consider in determining credibility of expert opinion).

remainder that required it to incur costs to cure the situation.[13] The County's fourth issue concerns the admissibility of evidence regarding the cost of removing and later reinstalling the underground storage tank system on the remainder. First, the County contends Crestview is improperly claiming damages for inverse condemnation of the storage tanks. Second, it contends the expert testimony regarding the unsafe condition caused by construction near the underground storage tanks was speculative and should not have been admitted.

### 1. Inverse Condemnation Argument

■ At trial and on appeal, the County argued the evidence regarding the underground storage tanks could only relate to an inverse condemnation claim. It asserts that whether the underground storage tanks have been taken for a public purpose is a question of law for the court, not a question for the jury.

■ In a partial takings case, the landowner may recover as damages the costs to cure any unsafe condition on the remainder necessitated by the taking. *See Interstate Northborough*, 66 S.W.3d at 224; *see also County of Bexar v. Santikos*, 144 S.W.3d 455, 461 (Tex.2004) ("Nevertheless, costs to mitigate damage or move existing driveways or other improvements may be compensable even if impaired access is not."). The supreme court has held that "[d]amages due to required modifications to the remainder, as a result of the condemnation, or damages due to a loss of improvements on the remainder because of the condemnation may, on a proper showing, be compensable." *Interstate Northborough*, 66 S.W.3d at 224 (quoting *State v.*

*Centennial Mortgage Corp.*, 867 S.W.2d 783, 784 (Tex.1993) (per curiam)).

In *Interstate Northborough*, the State condemned a strip of property as part of a project to widen a highway and its frontage road. The landowner's planning expert explained that the taking shortened two of the five driveways to the remainder property and made them unsafe. *See Interstate Northborough*, 66 S.W.3d at 224. The expert said it was necessary to close one driveway and to renovate the parking garage to return the other driveway to a safe length. *See id.* The landowner's appraiser used the cost to cure the unsafe driveways in his opinion on the damages to the remainder caused by the taking. *See id.* The supreme court concluded the landowner's "unsafe access and cost to cure evidence reflects specific damages. Therefore, we agree with the court of appeals and hold that the trial court did not err in admitting evidence about these damages." *Id.*

Here, Crestview is not claiming the underground storage tanks were taken for a public purpose requiring payment of just compensation. Rather, Crestview is seeking to recover, as damages to the remainder, what it asserts are the necessary costs to cure an unsafe condition allegedly cause by the proposed construction on the part taken. This is not an inverse condemnation claim. The jury was never asked to decide a legal question of whether the storage tanks were taken for a public purpose without just compensation. Therefore, the trial court did not abuse its discretion by overruling the County's inverse condemnation objections regarding the evidence concerning the underground storage tanks.

---

13. Crestview removed the storage tanks in March of 2007, after the date of the take, but long before road construction began. At the time of trial in February of 2009, road construction had not yet begun on the road adjacent to the property. The record is not clear when that construction was to begin.

## 2. "Speculative" Evidence Argument

■ Next, the County argues that the trial court erred by admitting testimony of Crestview's land planning expert, Jerry Sylo, and appraiser, Archibald, about safety issues and the possibility the storage tanks could explode during the road construction because that evidence was based on nothing more than possibilities and was entirely speculative.[14] The County also argues their testimony on this subject was beyond the scope of their expertise. A review of the record indicates, however, that the County did not timely and specifically raise these objections [15] in the trial court.

■ To preserve error for appellate review, a timely, specific objection must be made and ruled on in the trial court. TEX. R.APP. P. 33.1; TEX.R. EVID. 103(a)(1). A specific objection enables the trial court to understand the precise grounds and to make an informed ruling and affords the offering party an opportunity to remedy the defect, if possible. *McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 74 (Tex.1989). The complaint made on appeal must comport with the objection made before the trial court. *Religious of Sacred Heart of Tex. v. City of Houston*, 836 S.W.2d 606, 614 (Tex.1992). To preserve a complaint that an expert's testimony is unreliable, a party must object to the testimony on that basis before trial or when it

is offered. *Guadalupe–Blanco River Auth. v. Kraft*, 77 S.W.3d 805, 807 (Tex. 2002) (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998)).

Jerry Sylo, Crestview's land planning expert, testified that when he met with city officials about the project, he told the fire marshal that the owner thought it prudent to remove the storage tanks because of the heavy equipment that would be used to reconstruct the road. Without objection, Sylo was asked to explain what the safety issues would be if the storage tanks had been left in place during the road construction. He explained the storage tank system was twenty-years old and had a capacity of 26,000 gallons. There was a concern because the heavy equipment used to construct a road would be coming within three to ten feet of the vent lines connected to the storage tank system. Sylo understood from talking with Crestview's lawyer that the owner was concerned that the tanks or the vents could be damaged by the construction equipment. He said the owner felt it was more prudent to remove the storage tanks before construction and replace them with a new system after the road was completed. Sylo understood the owner removed the storage tanks primarily for safety purposes.

Without objection, Sylo responded to a question about what would happen if a jackhammer gave off a spark that hit the

---

**14.** However, the County does not raise an issue on appeal that the opinions were so speculative and conclusory as to be legally insufficient to support the judgment. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex.2004) ("[W]hen the [reliability] challenge is restricted to the face of the record—for example, when expert testimony is speculative or conclusory on its face—then a party may challenge the legal sufficiency of the evidence even in the absence of any objection to its admissibility."). We may not consider unassigned error. *See Pat Baker Co. v. Wilson*, 971

S.W.2d 447, 450 (Tex.1998) (per curiam) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error.").

**15.** The County did object to much of Sylo's testimony about the storage tanks, but only on the grounds of relevance and inverse condemnation. The County did not object that the evidence was speculation and outside his expertise until the second day of Sylo's testimony.

vent lines of the system. He testified that if a piece of heavy equipment hit a tank and sparked, there was a strong potential for the tank to blow up, which would then create a chain reaction causing the other two tanks to blow up. He said, "It's almost a certainty that the whole intersection, including the buildings on all four corners, are going to have huge damage if those guys blow up." He explained that a second type of problem would be a fuel leak in the system and the environmental problems association with a leaking underground gasoline storage tank. Sylo then gave an expert opinion regarding the storage tanks, again without objection by the County:

> Q. [I]s it your opinion as a land planner and expert witness in this case that they were forced to remove these tanks because of this condemnation action?
>
> A. In my opinion, because of the reconstruction of the road, if they did not remove the tanks, I think they would be setting themselves up for a potential hazardous waste issue, best case scenario. Worse case scenario, a blown up intersection. So, yes, it's my opinion that the taking and the subsequent reconstruction caused the property owner to remove the tanks.

It was not until the second day of Sylo's testimony that the County objected that his testimony about the safety issues was speculative. For example, when Sylo was asked if he had formed an opinion about the safety risk of the storage tanks and vent lines being so close to the construction site, the County made a relevance objection that was overruled. When Sylo was asked to give his opinion about the safety risk, the County objected to relevance and that it was speculation. The trial court overruled the objections.

Later, the County took Sylo on voir dire and for the first time objected that he was not qualified to give an opinion about the safety risk of leaving the storage tanks in place during construction. After much discussion of Sylo's experience with public works projects,[16] the trial court allowed his testimony and overruled the County's objection.

Similarly, the County's objections to Archibald's testimony about the safety issue involving the storage tanks were on other grounds. Archibald gave his opinion that the storage tank system should have been removed because the storage tanks, although outside the taking, were within three to five feet of where the construction would take place. He said either vibrations or actual equipment during construction could cause the tanks to rupture and explode or leak, and this caused an unsafe condition. The County objected to this testimony on the basis it raised an inverse condemnation claim that had not been pleaded. The County did not object when Archibald was later asked if, in his professional opinion, it was a safety hazard to

16. Sylo has bachelor of science degree in natural resources and has worked as a land planner in both the public and private sectors for twenty-four years. He has a residential construction background, but no construction background regarding removing and installing underground storage tanks. He did not review the design plans for this project, except for one sheet provided him by the city. Sylo explained that he has a working knowledge of what is involved in construction of roads and the equipment used to tear up existing roads and reconstruct new roads. He has no specific training regarding the effects of heavy equipment in proximity to underground storage tanks and vent lines, but has dealt with a number of service stations and has a working knowledge of what it takes to install underground storage tanks. Sylo stated he understands the vent systems for underground storage tanks and the attendant risk related to having heavy equipment and construction within three to five feet of the vent lines.

have the construction equipment so close to the storage tank vent lines.[17]

The County argues on appeal that the evidence about whether the taking created an unsafe condition in relation to the storage tanks was speculative and outside the expertise of Crestview's experts. But the County did not timely make these objections until long after the substance of that testimony had been presented to the jury. Therefore, the County's arguments are not preserved for appeal. *See* TEX.R.APP. P. 33.1.

We overrule the remainder of the County's fourth issue.

## E. Temporary Total Impairment of Access

▇▇▇▇▇ In answer to a separate jury question, the jury found Crestview suffered $108,307 in damages caused by a temporary but total restriction of access to the property as a result of the condemnation. In its fifth issue, the County argues the trial court abused its discretion by admitting evidence regarding a temporary but total impairment of access. The County makes several arguments under this issue, but the essence of the argument is that whether a claim for impaired access is compensable is a question of law and the trial court erroneously determined that Crestview's access rights will be substantially and materially impaired by the taking.[18] Specifically, the County argues there is no evidence to support the trial court's implicit finding that Crestview's access rights will be substantially and materially impaired by the taking. As a result, the County asserts, the trial court erred

by admitting evidence of impaired access damages before the jury. If the County is correct, the trial court erred by submitting the question to the jury.

▇▇▇▇▇ A landowner may recover damages for impaired access if the trial court determines his access rights have been substantially and materially impaired by the taking. *See State v. Heal,* 917 S.W.2d 6, 9 (Tex.1996). Damages are not recoverable unless there was either a total temporary or partial permanent restriction of access, or a partial temporary restriction of access due to illegal or negligent activity. *State v. Schmidt,* 867 S.W.2d 769, 774–75 (Tex.1993); *City of Austin v. Ave. Corp.,* 704 S.W.2d 11, 13 (Tex.1986). Whether the landowner in a condemnation case has suffered a substantial and material impairment of access is a question of law for the court to determine. *See Heal,* 917 S.W.2d at 9. By submitting the damage question to the jury, the trial court necessarily determined that Crestview suffered a substantial and material impairment of access to its property. *Id.* We review this legal determination de novo, that is, without deference to the trial court's decision. *Id.*

Crestview's evidence regarding impairment of access consisted of testimony that: (1) utilities will be disconnected from time to time; (2) construction will cause dust to come on to the property and interfere with washing cars; and (3) it is possible construction workers will block access with equipment, vehicles, or dirt. For example, Sylo testified that the road construction would have a negative impact on the oper-

---

**17.** The County did object on grounds of speculation to the question of who would pay damages if there were an explosion of the storage tanks. The trial court overruled the objection, but the County does not challenge the ruling regarding evidence of responsibility for damages on appeal.

**18.** We liberally construe the briefing rules, and a statement of an issue or point will be treated as covering every subsidiary question that is fairly included. *See* TEX.R.APP. P. 38.1(f), 38.9.

ation of the car wash because "typically with a construction project, you turn off water, you turn off sewer because—you turn off electricity." Sylo said he believed there would be occasions during construction when water and electricity will be cut off to the car wash, but he gave no basis for this belief and did not provide any estimate of the time periods during which utilities would be interrupted. With regard to dust during construction, he said there is "a lot of dirt, a lot of dust" around a construction zone and the dust will get on newly washed cars. He speculated that there will be times when the car wash will not be able to operate during construction, but gave no indication how long any interruption would last.

Warren testified based on his experience with other road construction projects in the area that there will be days when they lose utilities necessary to operate and days when they will have dust. He said the interruption of utilities and the dust coming onto the property will cause him to temporarily close the car wash. Warren estimated the damages for the temporary total loss of the ability to conduct operations on the property at $225,000, but did not detail how he calculated this number.

Archibald also testified about access to the property during construction. He said utilities will be disconnected from time to time and that a car wash cannot operate without utilities. He then explained:

[I]t is possible, and I have seen through experience, when somebody's on lunch break, they could very easily park a bulldozer or grade all in front of any or all of these or stack dirt or material in front of access points on the subject property.

I think a construction period of a year is reasonable. And I basically took the remainder after the taking, and the condemning authority will basically be leas-

ing it for a year. Just a ten percent lease rate on all the property.

Even without an interruption of utilities, Archibald stated: "There is still a chance that one and/or all of the points of access to the property could be blocked by dirt, a hole, or a piece of equipment, and I've certainly seen that in Dallas." Archibald did not attempt to quantify the chance in any way.

Crestview cites *State v. Whataburger, Inc.*, 60 S.W.3d 256 (Tex.App.-Houston [14th Dist.] 2001, pet. denied), as support for its impaired access claim. In *Whataburger*, the State condemned a strip of land to widen a highway. Both parties agreed that, in order to comply with setback requirements, the taking required that the existing building be demolished and rebuilt on another part of the property. *Id.* at 260. They also agreed a reasonable time for reconstruction of the building would be nine months. *Id.* at 263. Whataburger argued the taking caused a total temporary denial of access for the nine months required to rebuild the building. *Id.* at 261. The State argued that physical access to the property remained, but the court agreed with Whataburger, stating, "A building that has been razed and no longer exists cannot be entered. Accordingly, while no physical barrier prevented ingress or egress upon the remaining land, we find Whataburger was effectively denied access to the improvements thereon." *Id.*

 *Whataburger*, however, is distinguishable. There it was undisputed that the taking of a portion of the property required the demolition and reconstruction of the building on the remainder of the property. The court held that such a demolition constituted a material and substantial denial of access to the improvements. *See id.* By way of contrast, in this case Crestview asserts the trial court's

finding of a substantial and material denial of access to its property is supported by evidence that: (1) utilities may be disconnected from time to time; (2) occasionally access to the property might be blocked by construction equipment, vehicles, or dirt; and (3) dust may interfere with operating the car wash. These complaints fall along the lines of the normal inconvenience from construction activities the supreme court has routinely rejected as recoverable damages.[19] For example, in *Schmidt* the property owners contended that construction activities in front of their property, while not precluding access, would make it so inconvenient that business on the property would be damaged. *See Schmidt*, 867 S.W.2d at 775. The supreme court explained that such inconveniences are not compensable:

> The inconvenience and damage which a property owner suffers from these temporary obstructions are incident to city life and must be endured. The law gives him no right to relief, recognizing that he recoups his damage in the benefit which he shares with the general public in the ultimate improvement which is being made.

*Schmidt*, 867 S.W.2d at 775 (quoting *City of Austin v. Ave. Corp.*, 704 S.W.2d 11, 12 (Tex.1986)). Crestview has not shown it will suffer anything more than these temporary construction inconveniences as a result of the condemnation.

We conclude as a matter of law based on this record that interruption of utilities, possible blockage of driveways, or construction related dust migrating onto the car wash facility do not create a substantial and material impairment of access to the property. Therefore, Crestview is not entitled to recover damages for impairment of access and the trial court erred by submitting the impaired access damage question to the jury.

We sustain the County's fifth issue.

### F. Jury Argument and Jury Charge

The County's sixth issue contains two unrelated and discrete arguments: the trial court erred by overruling its objections to Crestview's closing arguments; and the trial court gave an incorrect definition in the jury charge. We address these arguments in turn.

#### 1. Jury Argument

■ The County complains of improper jury argument in the following areas: (1) that the County has sovereign immunity against damages for dangerous conditions created by its contractors; (2) that Crestview paid to remove the underground storage tanks for the protection of the jury and the public; (3) a reference to eminent domain involving the Dallas Cowboys Stadium in Arlington; (4) a reference to the Oklahoma City bombing; (5) that the only damage numbers were presented by Crestview; and (6) the County had the right to pave the road up to the property line.

It is not clear from the County's briefs whether it contends these jury arguments were incurable. Based on the record as a

---

19. For example, the supreme court recently reaffirmed that damages due to the "disruption of use due to construction activities" of the condemning authority during a roadway expansion project are not compensable. *See State v. Bristol Hotel Asset Co.*, 293 S.W.3d 170, 173 (Tex.2009) (per curiam) (citing *Schmidt*, 867 S.W.2d at 777). It is settled law that damages from noise, dust, increased traffic, and other inconveniences incident to road or highway construction are not recoverable. *See Felts v. Harris County*, 915 S.W.2d 482, 485 (Tex.1996); *State v. Biggar*, 873 S.W.2d 11, 14 (Tex.1994); *Schmidt*, 867 S.W.2d at 774–75, 777; *Ave. Corp.*, 704 S.W.2d at 12; *L–M–S Inc. v. Blackwell*, 149 Tex. 348, 233 S.W.2d 286, 289 (1950).

whole, we conclude that the arguments—either singly or in combination—were not incurable because they did not "strike[ ] at the very core of the judicial process." *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex.2009) (citing *Living Ctrs. of Texas, Inc. v. Penalver*, 256 S.W.3d 678, 681–82 (Tex.2008) (per curiam)). Accordingly, timely and specific objections and adverse rulings as to each argument were required to preserve error for appeal. *See* Tex. R.App. P. 33.1(a); *Phillips*, 288 S.W.3d at 883.

### a. Sovereign immunity

■ Crestview's counsel referred to evidence about a hole dug by the electric company near the car wash sign and suggested it was a dangerous condition that the County would not be responsible for because it has sovereign immunity. The County objected that this was not in evidence. The trial court observed that the County does have sovereign immunity and overruled the County's later objection that counsel misstated the law of sovereign immunity.

■ Counsel should confine argument to the facts in evidence and the law only as given by the court in the jury charge. *See Ragsdale v. Ragsdale*, 142 Tex. 476, 179 S.W.2d 291, 294 (Tex.1944); *Murphy v. Waldrip*, 692 S.W.2d 584, 590 (Tex.App.-Fort Worth 1985, writ ref'd n.r.e.). Here, the law of sovereign immunity had no application to this eminent domain proceeding and was not included in the court's charge to the jury. Thus, it was an improper subject for closing argument. However, based on the entire record of this case, we cannot say the argument, either alone or in combination with the other complained-of arguments, probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a); *Standard*

*Fire Ins. Co. v. Reese*, 584 S.W.2d 835, 839–40 (Tex.1979).

### b. Protection of the jury

■ Crestview's counsel argued that the owners spent money to remove the underground storage tanks "not only for their own protection, but for your protection, for the people that are driving down the streets or the people that will be in that intersection." The County objected, but the trial court said "you can not object to that." Crestview's counsel then moved on and did not repeat or emphasize the argument that the owner was protecting the jurors.

■ Appeals to the jury to put themselves in the place of one of the parties or to decide the case according to their own self interest are improper. *See Fambrough v. Wagley*, 140 Tex. 577, 169 S.W.2d 478, 481–82 (1943); *MAPCO, Inc. v. Farrington*, 476 S.W.2d 50, 54 (Tex.Civ.App.-Amarillo 1971, writ ref'd n.r.e.) (repeated argument in condemnation case urging jurors to place themselves in position of condemnees was improper); *City of Wichita Falls v. Jones*, 456 S.W.2d 148, 155 (Tex.Civ.App.-Fort Worth 1970, no writ) (improper to argue in condemnation case that award will come out of the city treasury).

Assuming, without deciding, that the argument could be construed as asking the jurors to put themselves in the place of one of the parties, we do not believe the single, brief reference quoted above invited the jury to decide the case on an improper basis. However, the error if any was minor, was not repeated or emphasized, and, based on the record as a whole, did not probably lead to the rendition of an improper judgment. *See Goswami v. Thetford*, 829 S.W.2d 317, 321 (Tex.App.-El Paso 1992, writ denied) (argument suggesting that jury put itself in the place of

the plaintiff was harmless where it was not inflammatory or lengthy).

### c. Cowboys Stadium

■■■ Crestview's counsel argued that eminent domain was in the news recently and mentioned that what happened with Dallas Cowboys Stadium in Arlington was happening in this case. The trial court immediately instructed counsel to stay within the evidence in the case. The County then requested an instruction for the jury to disregard the statement. The trial court responded that she had done so; thereafter, the County did not ask for further relief. We conclude the trial court's action sufficiently informed the jury to disregard the statement and that the County's failure to pursue the matter further and obtain an adverse ruling waived any error. *See* TEX.R.APP. P. 33.1(a).

### d. Oklahoma City

■■■ In arguing that the danger of explosion necessitated the removal of the underground storage tanks, Crestview's counsel stated "You all remember Oklahoma City. This would be nothing compared to that." The County objected and the trial court ruled the statement was outside the record. Again the County did not request further relief or obtain an adverse ruling on its objection. Thus, the County did not preserve any error. *See* TEX.R.APP. P. 33.1(a).

### e. Damage numbers

■■■ Counsel for Crestview argued several times that the only damage numbers had come from Crestview's witnesses and the County did not present evidence of a different number. The County objected to all but the first reference to this argument, claiming the argument was not in the jury charge or that it shifted the bur-

den of proof. The County does not argue that counsel's statement was outside the record. Indeed, the record supports the statement. We conclude the argument was based on the record and did not misstate the law in the jury charge; therefore, it was not improper. *See Ragsdale*, 179 S.W.2d at 294. Moreover, the trial court told the jury they could determine the damage figures themselves based on the evidence and properly instructed the jury on the burden of proof in the jury charge. We conclude the trial court took prompt corrective action and instructed the jury to decide the issue based on the evidence. Thus, any error in overruling the County's objections was not harmful.

### f. Paving up to property line

■■■ Apparently in response to the County's closing argument that the underground storage tanks and vent lines would be fourteen-and-a-half feet from the pavement on the new roadway, Crestview's counsel argued the County had the right to pave right up to the edge of the property line. The County's objection that this was outside the evidence was overruled. Crestview's counsel then said the County decides how wide the road will be and can change its mind at any time. This argument was in response to opposing counsel's argument as to the County's current construction plans. Thus, any error was invited and not harmful. *See Penalver*, 256 S.W.3d at 680 ("The complaining party must not have invited or provoked the improper argument.").

Based on the entire record, we conclude that any error in the complained-of arguments, either alone or in combination, did not cause the rendition of an improper judgment. We overrule the improper jury argument portion of the County's sixth issue.

### 2. Jury Charge

██ The County asserts that the definition of cost to cure in the jury charge was incorrect.[20] The jury charge asked the jury to find the difference in the fair market value of the remainder before and after the taking, including the cost to cure. Cost to cure was defined as "damages reflecting necessary modifications to the remainder, if any, to cure unsafe conditions created by the condemnation, if any." On appeal, the County asserts this is an incorrect statement of law.

However, the County did not object to the definition on this basis in the trial court. (Rather, the County objected that the definition was a comment on the weight of the evidence.) Accordingly, we conclude the argument raised on appeal was not preserved in the trial court. *See* TEX.R.APP. P. 33.1; TEX.R. CIV. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections."); *First Nat. Collection Bureau, Inc. v. Walker,* 348 S.W.3d 329, 337, 343 (Tex.App.-Dallas 2011, pet. denied). We overrule the jury charge and only remaining portion of the County's sixth issue.

### G. Prejudgment Interest and Costs

The County's seventh and final issue contains two separate arguments. First, that the trial court improperly calculated prejudgment interest. Second, that the trial court improperly included deposition costs in the award of costs against the County.

### 1. Prejudgment Interest

██ The County argues [21] the trial court awarded prejudgment interest on prejudgment interest, but its brief contains no explanation or argument as to how the judgment does so. Apparently the County is asserting the trial court erred by including *pre* judgment interest in the final judgment amount and then awarding *post* judgment interest on the entire judgment (i.e., including the amount of prejudgment interest accrued to the date of judgment).[22]

██ Prejudgment interest is calculated up to the date of judgment and is then included as part of the final judgment. *See Sisters of Charity of Incarnate Word v. Dunsmoor,* 832 S.W.2d 112, 119 (Tex.App.-Austin 1992, writ denied) (citing *Coles v. Kelsey,* 13 Tex. 75 (1854)). Post-judgment interest then begins to accrue on the entire amount of the final judgment (including court costs and prejudgment interest) from the date of judgment until paid. *See* TEX. FIN.CODE ANN. § 304.003(a)("(a) A money judgment of a court of this state to which Section 304.002 does not apply, *including court costs awarded in the judgment and prejudgment interest,* if any, earns postjudgment

---

**20.** The County contends the trial court erred by submitting a question on temporary but total denial of access to the jury. Because of our disposition of the impairment of access claim, we need not address this argument.

**21.** The County argues on appeal that the judgment awarded prejudgment interest on future damages. *See* TEX. FIN.CODE ANN. § 304.1045 (West 2006). This argument was not raised in the trial court and is not preserved for appeal. TEX.R.APP. P. 33.1.

**22.** To the extent the County is asserting any other argument with regard to prejudgment interest, we conclude it is inadequately briefed and waived. *See* TEX.R.APP. P. 38.1(i) (brief must contain clear and concise argument for contentions made with appropriate citation to authorities and to the record); *Bolling v. Farmers Branch Indep. Sch. Dist.,* 315 S.W.3d 893, 895 (Tex.App.-Dallas 2010, no pet.).

interest at the rate determined under this section.") (emphasis added); *Harris v. Chang*, No. 01–99–00728–CV, 2002 WL 24581 at *9 (Tex.App.-Houston [1st Dist.] Jan. 10, 2002, pet. denied) (not designated for publication). We conclude the trial court did not err by including prejudgment interest in the final judgment and awarding postjudgment interest on the amount of the judgment.

We overrule the interest portion of the County's seventh issue. However, in light of our reversal of the award of damages for impaired access, the trial court should recalculate prejudgment interest on the new judgment amount on remand.

### 2. Deposition Costs

██ The second part of the County's seventh issue complains that the trial court erred by including deposition costs in the award of costs. Citing government code section 52.059, the County claims Crestview is responsible for the deposition costs because its attorney asked the first question. *See* TEX. GOV'T CODE ANN. § 52.059 (West 2005).

██ The award of costs is to compensate the successful party for costs incurred in the litigation. Each party in litigation is liable for all costs incurred by him. TEX.R. CIV. P. 125, 127. However, the "successful party to a suit shall recover of the adversary all costs incurred therein, except where otherwise provided." TEX.R. CIV. P. 131. Recoverable costs are those expressly provided for by statute, equitable principles, or contract. *See Shenandoah Assocs. v. J & K Properties, Inc.,* 741 S.W.2d 470, 486 (Tex.App.-Dallas 1987, writ denied). The civil practice and remedies code expressly authorizes the trial court to include in the judgment all costs, including "fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit."

TEX. CIV. PRAC. & REM.CODE ANN. § 31.007(b)(2). The expense of taking depositions is a recoverable court cost. *See Shenandoah Assocs.,* 741 S.W.2d at 487 (citing *Wallace v. Briggs,* 162 Tex. 485, 348 S.W.2d 523, 527 (1961)); *see also* TEX.R. CIV. P. 203.2(f) (stating clerk of court must tax charges for preparing original deposition transcript as costs).

Section 52.059, cited by the County, has nothing to do with the trial court's award of costs to the successful party. Chapter 52 of the government code governs court reporters and shorthand reporting firms. *See* TEX. GOV'T CODE ANN. § 52.001–.059. Section 52.059 merely provides that the attorney asking the first question in a deposition is jointly and severally liable *to the court reporter* for the cost of taking the deposition. *Id.* § 52.059(a) ("an attorney who takes a deposition and the attorney's firm are jointly and severally liable for a shorthand reporter's charges" for reporting and transcribing the deposition and for each copy of transcript requested by the attorney). We reject the County's argument because, as set forth above, the law clearly allows the cost of the original deposition transcript to be included in the award of costs.

We overrule the remainder of the County's seventh issue.

### V. CONCLUSION

Based on the record, we conclude that Crestview's access rights will not be materially and substantially impaired by the taking; thus, it is not entitled to recover the damages found by the jury in answer to question number two as a matter of law. *See State v. Dawmar Partners, Ltd.,* 267 S.W.3d 875, 880 (Tex.2008) (per curiam). Because the jury questions segregated between compensable and noncompensable damages, our disposition of the County's fifth issue on impaired access

would normally entitle the County to rendition of judgment on that issue. *See id.* at 881 (where jury questions segregate between compensable and noncompensable damages, a new trial is not necessary to remedy the erroneous award of severance damage). However, because the County requests only a remand, we remand that portion of the case to the trial court even though the record would otherwise support a rendition of judgment in the County's favor on that claim. *See id.; State v. Heal,* 917 S.W.2d 6, 11 n. 2 (Tex.1996). A remand is also necessary for the trial court to recalculate prejudgment interest after excluding the impaired access damages.

Accordingly, we reverse that portion of the trial court's judgment awarding damages for impaired access and prejudgment interest and remand that portion of the case for further proceedings consistent with this opinion. In all other respects, we affirm the trial court's judgment.

## OPINION ON MOTION FOR REHEARING

We deny Dallas County's motion for rehearing with the following additional comments.

### Charge Error Regarding "Cost to Cure"

 In connection with question number one, the jury was instructed that the damage, if any, to the remainder of Crestview's property was the difference between the fair market value of the remainder immediately before and immediately after the taking, including the "Cost to Cure." The jury was further instructed: " 'Cost to Cure' is defined as damages reflecting necessary modifications to the remainder, if any, to cure unsafe conditions created by the condemnation, if any." In its appellant's brief, the County argued the trial court abused its discretion by submitting this definition because it was "an incorrect statement of Texas law." [1] In our original opinion we concluded the County's argument was not preserved, as we interpreted the County's objection at the charge conference as being that the definition constituted a comment on the weight of the evidence.

The County's motion for rehearing registers its disagreement, contending it preserved error on this argument when it stated during the charge conference that, "Well, making a statement there that this is the law of cost to cure. None [of] these cases say this is the law on cost to cure. None of them say if you have damages, doing this is caused by a reflection of this, that it's the cost to cure. If that's the case, cost to cure is normally used in— [. . .]."

The colloquy during the charge conference concerning the charge's use of the definition "cost to cure" covers some ten pages in the reporter's record. Initially, the County stated its objection was that

---

1. The County's argument, as stated in its appellant's brief, concerning the "cost to cure" definition is as follows:

 The jury charge defined cost to cure as damages reflecting necessary modifications to the remainder, if any, to cure unsafe conditions created by the condemnation, if any. . . . This definition is an incorrect statement of Texas law. "Cost-to-cure cases are those in which the condemnor seeks to prove that any diminution in the market value of a remainder resulting from a partial taking can be cured at a cost less than the diminution." *City of Sugar Land v. Home & Hearth Sugarland, L.P.,* 215 S.W.3d 503 (Tex.App.-Eastland 2007, pet. den'd). The definition used improperly assisted and mislead [sic] the jury in awarding damages to Crestview. 3 CR 600–604.

 The ending citation to the clerk's record is to the jury charge itself.

the instruction and definition were a comment on the weight of the evidence. After several pages of argument from both sides, the trial judge stated that she did not understand the County's objection. The County attempted to explain the objection, and the trial court stated, "What you're saying you think it's a comment on the weight of the evidence." The County responded, "Yes. Thank you. . . . Comment on the weight of the evidence." The trial court then modified the definition of "cost to cure" in the charge by twice inserting the phrase "if any" into the text.

More discussion ensued, during which the County's attorney made the statement quoted above. The trial court then asked counsel for Crestview for its "best case" on the issue.[2] After more discussion, and after the trial court dealt with several objections to other matters in the charge, it eventually stated: "I'm going to deny on your last objection on cost to cure."

After that, when asked if it had any more objections, counsel for the County stated: "Yes. On Question Number One we would object again on the cost to cure on the inverse condemnation theory we've advanced to the court numerous times. It was not pled or tried by consent." The trial court responded: "I know, but I'm overruling it again."

A party objecting to the jury charge must "point out distinctly the objectionable matter and the grounds of the objection." TEX.R. CIV. P. 274. When the complaining party's objection is, "in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable." *Id.*

Reviewing the reporter's record of the charge conference, we cannot determine the County's exact complaint to the trial court concerning "cost to cure" *except* that it constituted a comment on the weight of the evidence. The trial court addressed that complaint by modifying the statement of the definition.

The other language—a brief, vague comment and not an objection—to which the County directs our attention in the motion for rehearing and on which it relies as preserving error, does not distinctly explain why the phrase "cost to cure" should have been omitted from the charge, or why the definition of the phrase being used was improper. *See* TEX.R.APP. P. 33.1(a); TEX.R. CIV. P. 274; *In re B.L.D.*, 113 S.W.3d 340, 349 (Tex.2003) ("Our procedural rules state that any complaint to a jury charge is waived unless specifically included in an objection.").[3] We conclude this statement during the charge conference preserved nothing for appellate re-

---

**2.** From the reporter's record, that case appears to be *Interstate Northborough P'ship v. State*, 66 S.W.3d 213 (Tex.2001).

**3.** The County also contends it preserved error by requesting two jury questions asking the jury to find the fair market value of the remainder (1) immediately before and (2) immediately after the condemnation, without any instruction or definition of cost to cure. The trial court did not expressly rule on these requested questions; it submitted a broad form damage question measured by the difference in value rather than separate questions for before and after values. *See Westgate, Ltd.*

*v. State*, 843 S.W.2d 448, 457 (Tex.1992) ("Rather than asking separate questions concerning the before and after value, trial courts should submit one question asking the difference in these values."). The County never argued in its appellate brief that the trial court abused its discretion by refusing either of these questions. We do not see how by requesting these questions the County distinctly and clearly made known to the trial court that the cost to cure definition was an allegedly incorrect statement of Texas law. *See* TEX.R.APP. P. 33.1, TEX R. CIV. P. 274.

view. *See* TEX.R.APP. P. 33.1(a); TEX.R. CIV. P. 274.

## Judicial Notice of Regulations

██ The County's second issue in its motion for rehearing argues that we erred in our analysis of the damages assessed for the underground storage tank system. The County requests that we take judicial notice of regulations regarding the temporary removal from service of underground storage tank systems. *See* 30 TEX. ADMIN. CODE § 334.54 (Tex. Comm'n Envtl. Quality, Temporary Removal from Service). Apparently, the County argues that because the administrative code permits an owner to temporarily remove underground storage tanks from service, Crestview was required to do so in this case.

The County does not explain how the existence of regulations permitting the temporary removal of underground storage tanks from service shows the trial court abused its discretion in admitting evidence regarding the underground storage tank system, particularly where the County did not present these regulations to the trial court as a ground for its objections to the evidence. Nor does the County explain why it failed to present these regulations to the trial court in support of its position, or why it failed to present them in its appellate brief. And nothing in the record supports the conclusion that Crestview was required to follow the permissive regulations, assuming they applied to its system. Although we take notice of the regulations, *see* TEX.R. EVID. 204, they are immaterial to the resolution of any issue presented in this appeal.

## Lost Profits

██ We have already addressed the arguments raised in the County's third issue in its motion for rehearing regarding the testimony of Crestview's expert (Archi-

bald). In its original brief, the County complained the trial court erred by admitting Archibald's opinion testimony concerning lost profits because lost profits are not recoverable in a condemnation action as a separate item of damage. On rehearing the County agrees that "lost profits may, nonetheless, be admitted as it bears upon the value of the land taken or the diminution in value of the remainder." It then goes on, however, to concoct a formula—picking and choosing some numbers from Archibald's appraisal report (which was not admitted in evidence), ignoring other numbers such as depreciation, and adding back the values Archibald used for loss of inspection and detailing services— by which the sum of these after-the-taking values is greater than the value Archibald gave for the entire property before the taking. The purpose of this argument is inscrutable and the issue presents nothing for review. *See Bolling v. Farmers Branch Indep. Sch. Dist.*, 315 S.W.3d 893, 895 (Tex.App.-Dallas 2010, no pet.) ("Only when we are provided with proper briefing may we discharge our responsibility to review the appeal and make a decision that disposes of the appeal one way or the other.").

## Speculative Evidence

The County's fourth issue in its motion for rehearing combines several complaints. Initially, the County argues that the damages to the remainder were so intertwined with the damages for the temporary total denial of access that all damages should be reversed. The County did not raise this issue in its appellate brief, does not cite any authority for the proposition in its motion for rehearing, and the record does not support the County's conclusion.

██ Next, the County argues that we erred in the analysis of the reliability of Archibald's testimony regarding lost prof-

its. The County argues that Archibald's opinion is unreliable because there was conflicting evidence regarding whether Crestview would be able to continue performing detailing and inspection services as a result of the taking. As we indicated in our opinion, this conflict does not render Archibald's opinion unreliable. It merely goes to the weight, not the admissibility, of his opinion. *See Polk County v. Tenneco, Inc.*, 554 S.W.2d 918, 923–24 (Tex.1977); *Tex. Elec. Serv. Co. v. Wheeler*, 551 S.W.2d 341, 342–43 (Tex.1977). "The weakness of facts in support of an expert's opinion generally goes to the weight of the testimony rather than its admissibility." *DMC Valley Ranch, L.L.C. v. HPSC, Inc.*, 315 S.W.3d 898, 905–06 (Tex.App.-Dallas 2010, no pet.) (quoting *LMC Complete Auto., Inc. v. Burke*, 229 S.W.3d 469, 478 (Tex. App.-Houston [1st Dist.] 2007, pet. denied)).

The County also contends that it preserved complaints concerning the evidence of Sylo and Archibald about safety issues with the underground storage tanks during the road construction. The County argues that conclusory opinion evidence is incompetent evidence and will not support a jury finding even if not objected to at trial, citing *General Motors Corp. v. Iracheta*, 161 S.W.3d 462, 471 (Tex.2005).

The supreme court has explained that "a party may complain that conclusory opinions are legally insufficient evidence to support a judgment even if the party did not object to the admission of the testimony." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 816 (Tex.2009). However, when a scientific opinion is not conclusory but the basis for the expert's opinion is unreliable, an objection at trial is necessary "to give the proponent a fair opportunity to cure any deficit and thus prevent trial by ambush." *Id.* (citing *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 409 (Tex.1998)). The County correctly cites this principle of law. However, the County never claimed in this appeal that the opinions were legally insufficient evidence to support the judgment.

In both *Pollock* and *Iracheta*, the supreme court considered challenges to the legal sufficiency of the expert opinion evidence to support the judgment in jury cases. The complaining parties there did not object[4] to the admission of the opinion evidence at trial. But they preserved the legal sufficiency challenge in the trial court by appropriate procedures,[5] presented it to the court of appeals by properly assigned error,[6] and argued it to the supreme court. Indeed, legal sufficiency challenges must be preserved in the trial court and raised in the court of appeals in order to be

---

**4.** In *Iracheta*, General Motors objected to one of the plaintiff's experts at the end of cross-examination, but the supreme court concluded the objection was not too late because the deficiency was not apparent earlier. *See* 161 S.W.3d at 471.

**5.** *See Pollock*, 284 S.W.3d at 816 (motions for directed verdict, for judgment notwithstanding the verdict, and for new trial); *Gen. Motors Corp. v. Iracheta*, 90 S.W.3d 725, 729–30 (Tex.App.-San Antonio 2002) (motion for judgment notwithstanding the verdict/motion to disregard jury answers), *rev'd*, 161 S.W.3d 462 (Tex.2005). In order to preserve a challenge to the legal sufficiency of the evidence

to support a jury's finding, the appellant must raise the specific complaint in the trial court by one of the following: (1) a motion for directed verdict; (2) objection to the submission of the jury question; (3) a motion to disregard the finding; (4) a motion for judgment notwithstanding the verdict; or (5) a motion for new trial. *See Cecil v. Smith*, 804 S.W.2d 509, 510–11 (Tex.1991).

**6.** *See City of San Antonio v. Pollock*, 155 S.W.3d 322, 330–32 (Tex.App.-San Antonio 2004), *rev'd*, 284 S.W.3d 809 (Tex.2009); *Gen. Motors Corp. v. Iracheta*, 90 S.W.3d 725, 729–30 (Tex.App.-San Antonio 2002), *rev'd*, 161 S.W.3d 462 (Tex.2005).

reviewed by the supreme court. *See* TEX. R.APP. P. 53.2(f) ("If the matter complained of originated in the trial court, it should have been preserved for appellate review in the trial court and assigned as error in the court of appeals.").

Here the County, unlike the appellants in *Iracheta* and *Pollock*, did not raise an issue in this appeal arguing the opinion evidence was legally insufficient to support the judgment. The County simply never argued on appeal that the expert testimony was conclusory and legally insufficient to support the judgment. Therefore, we did not address the legal sufficiency of the evidence in our opinion.

But in its motion for rehearing, the County claims we erred in stating that it did not raise a legal sufficiency issue on appeal regarding the opinions on the safety issues with the underground storage tanks. However, the County did not assert in any of its issues, nor in the argument under those issues, that the evidence at trial was legally insufficient to support the judgment. The County apparently recognizes this, as its motion for rehearing does not cite to where it raised this issue in its brief, or explain how the augments made in its brief could be construed to raise a legal sufficiency issue. Rather, the County merely cites the rule that "[w]here an assignment of error is sufficiently specific to enable the court to see *that a particular ruling* is complained of, it should be held good, although it should fail to state the reason why *such ruling* is claimed to be erroneous." *Arkoma Basin Exploration Co., Inc. v. FMF Assocs. 1990–A, Ltd.*, 249 S.W.3d 380, 388 n. 25

(Tex.2008) (quoting *Clarendon Land, Inv. & Agency Co. v. McClelland*, 86 Tex. 179, 23 S.W. 1100, 1103 (Tex.1893)) (emphasis added).

The County's argument falls short, however, because the only trial court rulings that the County complained about on appeal relate to closing arguments, costs, prejudgment interest, the phrasing of an issue in the charge (discussed earlier), and the admission and exclusion of evidence.[7] Complaining on appeal that the trial court abused its discretion in admitting evidence is not the same as complaining the evidence is legally insufficient to support the judgment. *See Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex.2009) ("Unlike review of a trial court's ruling as to admissibility of evidence where the ruling is reviewed for abuse of discretion, in a no-evidence review we independently consider whether the evidence at trial would enable reasonable and fair-minded jurors to reach the verdict.") (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005)). In its brief on appeal, the County did not cite the appropriate standard of review for legal sufficiency complaints, did not perform a legal sufficiency analysis of the evidence, or otherwise indicate that it was complaining about the sufficiency of the evidence to support the judgment, rather than or in addition to the trial court's admission of the evidence.

 Except for rare instances of fundamental error, legal insufficiency of the evidence, like any other appellate complaint, must be assigned as error on appeal. *See* TEX.R.APP. P. 38.1(f) ("The brief

---

7. Specifically with respect to the testimony of Sylo and Archibald concerning underground storage tanks, the County's issue stated: "The trial court abused its discretion in allowing testimony on the underground storage tank system." In the argument under this issue, in a section titled "inverse condemnation is a question of law for the court," the County asserted Archibald's and Sylo's testimony about safety issues "was based on nothing more than possibilities and was completely speculative.... *Thus, it should have been excluded.*" (emphasis added).

must state concisely *all issues or points presented* for review.") (emphasis added). We look to the issues and the arguments and authorities in appellant's brief to determine the grounds presented for appellate review and will consider all issues fairly raised. *See id.* (statement of an issue covers every subsidiary question that is fairly included), 38.9 (briefing rules construed liberally). However, "an appellate court has no discretion to fabricate an issue not raised in the appellant's brief." *Bankhead v. Maddox,* 135 S.W.3d 162, 163–64 (Tex.App.-Tyler 2004, no pet.). "Except for fundamental error, appellate courts are not authorized to consider issues not properly raised by the parties." *Mack Trucks, Inc. v. Tamez,* 206 S.W.3d 572, 577 (Tex.2006) (citing *In re B.L.D.,* 113 S.W.3d 340, 350–52 (Tex.2003)).[8] Doing so would be contrary to our adversarial system of justice and would deprive the opposing party of a fair opportunity to respond to such fabricated issue. Were we to do so, we would be abandoning our role as judges and become an advocate for one of the parties. *See Bolling,* 315 S.W.3d at 895–96 (court of appeals is not responsible for identifying possible trial court error, searching the record for facts that may be favorable to a party's position, or doing legal research that might support a party's contentions).

In this case we addressed the merits of the issues presented by the County. "When a party fails to preserve error in the trial court *or waives an argument on appeal,* an appellate court may not consider the unpreserved or waived issue." *Fed. Deposit Ins. Corp. v. Lenk,* 361 S.W.3d 602, 604 (Tex.2012) (emphasis added). We will not address new issues the County may now wish it had raised but did not. *See id.* at 612 (denying cross-petition for review where issue of attorney's fees was raised for the first time in motion for rehearing in court of appeals); *Humphries v. Advanced Print Media,* 339 S.W.3d 206, 207–08 (Tex.App.-Dallas 2011, no pet.) (issue raised for the first time in a reply brief will not be considered).

We conclude the County's appellate brief did not present a legal sufficiency issue for review. Accordingly, we express no opinion on the legal sufficiency of the evidence in this case.

## Conclusion

We deny the County's motion for rehearing.

---

**8.** *See also Exito Electronics Co., Ltd. v. Trejo,* 142 S.W.3d 302, 304 n. 1 (Tex.2004) (refusing to consider issue decided by court of appeals because petitioner did not raise the issue in the supreme court); *Jacobs v. Satterwhite,* 65 S.W.3d 653, 655–56 (Tex.2001) (per curiam) (court of appeals erred by reversing summary judgment on professional negligence claim because appellant never complained about summary judgment on that claim); *Pat Baker Co. v. Wilson,* 971 S.W.2d 447, 450 (Tex.1998) (per curiam) ("It is axiomatic that an appel-late court cannot reverse a trial court's judgment absent properly assigned error."); *Walling v. Metcalfe,* 863 S.W.2d 56, 58 (Tex.1993) (holding that court of appeals generally cannot reverse for reason that is not assigned as error on appeal); *San Jacinto River Auth. v. Duke,* 783 S.W.2d 209, 210 (Tex.1990) (per curiam) (stating "well-established rule that grounds of error not asserted by points of error or argument in the court of appeals are waived").